[Cite as *I.C.-R. v. N.R.*, 2016-Ohio-1329.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

I.C.-R.

    Appellant

    v.

N.R.

    Appellee

C.A. No.    27671

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2013-08-2324

DECISION AND JOURNAL ENTRY

Dated: March 30, 2016

---

WHITMORE, Judge.

{¶1}    Appellant, I.C.-R. ("Wife"), appeals from the order of the Summit County Domestic Relations Court granting custody of minor son ("M.") to Appellee, N.R. ("Husband"). We affirm.

I

{¶2}    M. was born in September 2012 during the parties' marriage. Husband also had sole custody of a school-age daughter ("A.") from a previous relationship.

{¶3}    Husband left the marital residence in July 2013 when M. was about 10 months old. Wife filed for divorce in August 2013. She moved for physical and legal custody of the child. Husband also requested custody.

{¶4}    After a two-day hearing, the domestic relations court entered a final decree in January 2015 granting physical and legal custody of M. to Husband, and visitation to Wife. Wife previously had been the child's custodial parent and primary caretaker since birth.

**{¶5}** Numerous witnesses testified at the two-day hearing. They were:

First Day

(1) Wife;

(2) James Brightbill (Guardian Ad Litem ("GAL"));

(3) Officer Vecchio (Twinsburg Police);

(4) Officer Hendershott (Twinsburg Police);

(5) Joseph McGrath (parents' mutual friend/acquaintance);

(6) Bobbi Phipps (parents' mutual friend/acquaintance);

(7) Maria Whitt (Wife's sister);

(8) Lawrence Milne (Husband's stepfather);

(9) Russell Roth (Husband's father);

(10) Chris Derry (Common Ground Family Services director);

Second Day

(11) Husband; and

(12) Dr. Janet Levatin (M.'s pediatrician).

**{¶6}** Husband testified that he left the marital residence after a dispute with Wife over her refusal to vaccinate the child. He claimed that Wife spent significant time living with M. at the maternal grandfather's house and away from the marital residence because she was afraid that M. would be exposed to illnesses in the marital apartment. Husband also claimed that Wife unfairly berated A., called her names, and isolated her for fear that she would bring home germs. Wife denied mistreating A.

**{¶7}** Wife testified that the parties' marriage began to deteriorate two years before Husband left, when Husband was involved in an incident that culminated in Husband pleading

guilty to misdemeanor criminal trespass. Wife testified that Husband was charged for slashing a female neighbor's car and threatening the neighbor and a girlfriend in the neighbor's home. Husband was initially charged with burglary, but pled to the lesser charge. At the hearing in this matter, Husband admitted that he entered a guilty plea to criminal trespass but denied committing the offense.

{¶8} Wife testified that Husband left the marital residence without warning. She testified that Husband had a serious drinking problem. Wife further testified that, after M. was born, Husband frequently did not come home after work, and sometimes stayed out all night. Wife averred that Husband had little interest in M., got angry when he got dirty as a result of taking care of M., and did not take any significant part in the child's daily care.

{¶9} Mr. McGrath, a work acquaintance of both parents during the marriage, testified that Husband confided in him early in 2013 prior to leaving the marital residence. Mr. McGrath claimed that he and Husband had gotten together to play video games. According to Mr. McGrath, Husband was upset that Wife was spending so much time with M., and was not sure that he could handle being a parent. Mr. McGrath testified that Husband disclosed thoughts about suicide.

{¶10} Husband disputed Mr. McGrath's testimony. Husband testified that he was not social friends with Mr. McGrath outside of work, he never confided in Mr. McGrath, he never told Mr. McGrath that he was suicidal or did not want to be a father, and that Mr. McGrath had made up the conversation. Husband testified that he was not suicidal.

{¶11} A magistrate held a hearing in October 2013 on temporary support and custody. Husband testified that he tried to arrange to visit M. between the time that he left the marital

residence in July 2013 and the hearing, but Wife would not let him see M. Wife denied that Husband tried to visit M. during this period.

{¶12} At the hearing before the magistrate, and at the final hearing before the domestic relations court, each parent accused the other of exercising poor judgment when caring for M. Wife argued that Husband was not capable of watching M. on his own. She claimed that before M. turned a year old, Husband was bathing M. in a shower stall when M. fell out and bruised his face. Wife claimed that Husband was playing on his phone at the time. She testified that Husband left the residence abruptly after the incident. Husband disputed Wife's version of events. He claimed that M. was in the shower stall but in a bath seat for infants, and that he slipped from Husband's grasp while wet and soapy. M. had a bruise but that there was no bleeding or broken skin. Husband denied being on the phone. Wife also testified about an incident when M. was a young infant and Husband let M. sleep on the couch while Husband fell asleep on the floor. Wife discovered M. with a couch cushion on his face, but with no injuries.

{¶13} Husband argued that he was capable of taking care of M. on his own, as shown by the fact that he had raised A. since he obtained sole custody of her in 2005. Husband testified that he was concerned about Wife's choice to forgo vaccinations for M. He also was concerned that Wife took M. to see a homeopathic pediatrician who did not administer vaccines and recommended that M. take homeopathic supplements and remedies at age two for anxiety and other conditions. Husband wanted to take M. to the pediatrician who had cared for his daughter. Husband also recalled an incident when Wife was nursing M. in the back seat of a moving car and did not want to put M. in an infant car seat.

{¶14} Following the hearing on temporary support and custody, the magistrate awarded temporary custody to Wife. Husband was awarded supervised visitation for two hours in the

evenings on Tuesdays and Thursdays. It was agreed that a mutual friend from work, Bobbi Phipps, would be present to supervise visitation at Wife's apartment. Wife testified that Husband selected Ms. Phipps to supervise visitation. Husband testified that Ms. Phipps was a mutual choice.

{¶15} Ms. Phipps testified that Husband only missed one scheduled visitation during a period of two or three months, with the exception of several occasions when Ms. Phipps was unavailable. Husband testified that Wife frequently was not home when he arrived for visitation on the appointed days. Wife testified that Husband "only showed up [for visitation] a handful of times," and that he arrived late and departed early. According to Ms. Phipps, the visitations were tense.

{¶16} It became less feasible for Ms. Phipps to supervise Husband's visitation in early 2014. For visits on March 18 and 20, Husband brought his stepfather, Mr. Milne. Wife's father, the child's maternal grandfather, was also present during the March 20 visit. During that visit, Wife, Husband, and the maternal grandfather got into a dispute about the cleanliness of the apartment and whether it was appropriate for M. to eat a piece of fruit that had been on the floor or in Husband's hand. According to Wife, Husband followed her into the kitchen and pushed her. She testified that she nearly fell but was able to catch herself. Wife called the police. Officer Hendershott was dispatched to the scene. Husband and Mr. Milne had left by the time he arrived.

{¶17} Officer Hendershott observed a bruise on the back of Wife's upper right arm consistent with her description of the events. Photographs were taken. Officer Hendershott testified that the following day Wife provided additional photographs depicting apparent bruising

that was not visible in the initial photographs. Officer Hendershott testified that the additional bruising may not have become visible immediately after the events in question.

{¶18} Later on March 20, Officer Hendershott arrested Husband for domestic violence. In a statement provided to police Husband asserted that he did not touch Wife or push her. He testified that Wife's father, the child's maternal grandfather, pushed him. Husband testified that the maternal grandfather was an alcoholic and a bully. The maternal grandfather could only speak limited English and therefore did not provide a statement to police.

{¶19} Husband was charged with misdemeanor domestic violence, but eventually pled to a lesser charge of disorderly conduct. He testified that the decision to enter a plea was a "business decision" and maintained that he did not touch Wife. Mr. Milne also testified that Husband did not push Wife, and that the maternal grandfather was the aggressor who pushed Husband. Mr. Milne testified that Husband wanted to file a police report on March 20, but that Mr. Milne convinced him to not bother because Mr. Milne felt that a police report would not do any good.

{¶20} Wife was granted a civil protection order as a result of the March 20 incident. The civil protection order was dismissed in October 2014 for failure to prosecute when Wife did not appear for a hearing. Wife and her counsel asserted that they did not receive notice of the hearing. Wife did not file objections to the dismissal. The dismissal was journalized in November 2014.

{¶21} Prior to dismissal, the civil protection order was modified in April 2014 to allow Husband one hour of visitation per week with M. at Common Ground Family Services ("Common Ground") visitation center. Mr. Derry, the director and owner of Common Ground, and a licensed social worker in Ohio, testified at the hearing in this case. He testified that Wife

did not cooperate in scheduling an initial intake interview at Common Ground, which resulted in a delay in scheduling Husband's visitation. He testified that Wife also did not cooperate in setting dates for Husband's weekly visitation. He further testified that Wife only scheduled five visits. Wife did not show up for two of the five scheduled visits, and did not pay for those visits. When Wife did show up, she brought the maternal grandfather, who was aggressive and disruptive. Eventually the maternal grandfather was asked to leave and agreed only under threat of police involvement. Mr. Derry testified that when Wife brought the child to scheduled visits, she did not help him transition. Instead she would cry and tell M. that "she was sorry that she had to put him through this" and that "this [was] dad's idea of the right thing to do."

{¶22} Mr. Derry personally observed one of the three visits that occurred at Common Ground. He testified that Wife brought M. to the visit very tired and agitated, as if he had been kept awake for a long time. He had a "very bad diaper rash, extremely raw and red." Wife did not try to encourage him. She brought a diaper bag that contained "only a few diapers and some clothes and some toys, but there was no blanket, no pacifier, no diaper ointment, no wipes or anything like that." There were no "comfort items" in the bag. In addition, a recording device was found in the lining of the diaper bag. Also, "the child had a recording device stuck in his shoe with his shoe tied on to his foot." Mr. Derry testified that the device was "also agitating the child's condition" and contributed to the "child crying and being inconsolable" for the entire visit with Husband. When Wife was confronted about the devices, she shrugged and turned away. At the hearing, Wife denied placing a recording device in M.'s shoe. Mr. Derry testified that, based on what he observed, Husband's demeanor with M. was gentle, attentive, and responsive.

{¶23} Mr. Derry testified that, without "a cooperative parent * * * helping the child to transition to dad" there were "very few opportunities to observe dad with the child," such that it

was "difficult to make recommendations" regarding what would be best for the child. Mr. Derry testified that "[i]t [did not] appear based on what [he had] seen that [Wife valued] * * * her son's relationship with his dad." According to Mr. Derry, "[s]he's doing everything she can * * * to try to thwart that relationship and to try to interfere."

{¶24} The parties did not successfully schedule any visitation sessions at Common Ground after June 2014. Husband did not make any effort to contact Common Ground to schedule his visitation. Common Ground did not hear from Husband until someone from the center called Husband in September 2014. Husband claimed that he wanted to have visitation but was waiting for someone to contact him regarding arrangements. Common Ground also contacted Wife. Mr. Derry testified that "when we called [Wife], she said that * * * the [child's] doctor felt that the visits were too traumatic for the child and so [Wife] wasn't going to bring the child back for that reason."

{¶25} The child's doctor, Dr. Levatin, testified at the hearing. Dr. Levatin practiced pediatrics and homeopathic medicine. She testified that "[h]omeopathy works with the energy [of the] body to help imbalances * * * self correct." Dr. Levatin did not administer vaccinations as part of her practice. Dr. Levatin recommended homeopathic remedies for M., including Stramonium in June 2014 to "help with fears, anxiety as it manifests in a [two]-year-old child, and sleep and abnormal behavior such as biting and hitting." Dr. Levatin opined that such "abnormal" behaviors resulted from visits with Husband without Wife present. She admitted that her only knowledge of the child's relationship with Husband was based on what Wife told her. She did not meet Husband or observe him with the child. Dr. Levatin's only interaction with Husband was to speak with him on the phone when he called to ask for copies of M.'s

medical records. Husband testified that Wife would not share M.'s medical information with him.

{¶26} The Court held a conference in chambers on October 20, 2014 during which Husband's visitation was discussed. Counsel for Husband and Wife were present in chambers along with Mr. Brightbill, who, on Husband's motion, had been appointed GAL for the child in January 2014. Wife and Husband were not in chambers. Mr. Brightbill testified that it was agreed between counsel and in the presence of the court that Husband would have visitation on Saturdays from 10:00 to 4:00. It was also agreed that Mr. Brightbill would be present for the first initial transition that week on Saturday, October 25.

{¶27} Mr. Brightbill arrived at Wife's residence to facilitate the transition on October 25. Husband arrived in a separate vehicle with Mr. Roth, the paternal grandfather. Husband remained in the parking lot and did not approach Wife's residence. Mr. Roth and Mr. Brightbill approached the residence to receive the child.

{¶28} Wife refused to allow the visitation to proceed without a written order from the court. She stepped outside to have a conversation with Mr. Roth, but would not produce the child.

{¶29} Wife's sister, Ms. Whitt, was present and filmed the encounter. It does not appear that the recording was entered into evidence in this matter. Ms. Phipps was also present at Wife's residence.

{¶30} Ms. Whitt called the Twinsburg police. Officer Vecchio responded. He testified that "[Wife] said that she did not want the child to go so we were just there to keep the peace and wait for [Husband] to leave, which he did." It appears that the civil protection order against

Husband had been dismissed prior to the events of October 25. The Twinsburg police department had on record that Husband had been granted companionship time with the child.

{¶31} Two days later, on October 27, 2014, Mr. Brightbill filed a motion to grant Husband temporary custody of M. on the basis that Wife had demonstrated her reluctance and lack of cooperation to allow Husband to have parenting time with the parties' child. The GAL submitted an affidavit regarding the events of October 25. The trial court granted the motion within ten minutes after it was filed. Wife could not be served with the October 27 order right away because she took leave from work beginning that day and was not staying at her residence. Husband was concerned that Wife had fled the country with M. because she and the maternal grandfather have Polish citizenship. Wife eventually returned to her residence and was made aware of the order.

{¶32} Wife moved the court to reconsider its temporary custody order and to remove the GAL. The court denied Wife's motions.

{¶33} Mr. Brightbill testified at the hearing that an award of custody to Husband was in the child's best interest. He testified that Wife deprived Husband of parenting time with the child without justifiable cause. He testified that he was aware of the March 20 incident that resulted in Husband's arrest for domestic violence. He further testified that Husband was capable of taking care of the child.

{¶34} The hearing took place over two days. Between the first and second days of the hearing, the trial court issued an order granting Husband additional visitation and making both parents residential and legal custodians of M.

{¶35} Following the second day of the hearing, the court entered a final decree granting the parties a divorce and, among other things, designating Husband the residential and custodial parent of M. The court awarded Wife visitation and ordered her to pay child support.

{¶36} Wife appealed from the final decree and moved to stay. She filed a supplemental motion to stay, stating that M. suffered unexplained injuries or rashes during visitation with Husband. The trial court granted Wife's motion to stay. M. was returned to Wife and Husband has visitation on weekends.

{¶37} We now turn to the issues raised on appeal. Wife brings three assignments of error for our review. We consider the assignments of error out of order to facilitate analysis.

II

Assignment of Error Number Three

THE TRIAL COURT ABUSED ITS DISCRETION IN REMOVING LEGAL AND PHYSICAL CUSTODY FROM THE [WIFE] AND PLACING LEGAL AND PHYSICAL CUSTODY WITH THE [HUSBAND].

{¶38} In her third assignment of error, Wife contends that the trial court abused its discretion when it removed her as physical and legal custodian of M. and granted custody to Husband. We disagree.

{¶39} Trial courts enjoy broad discretion in their allocation of parental rights and responsibilities. *Graves v. Graves*, 9th Dist. Medina No. 3242-M, 2002-Ohio-3740, ¶ 31, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "[A] trial court's determination in custody matters 'should be accorded the utmost respect' because '[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *Baxter v. Baxter*, 9th Dist. Lorain No. 10CA009927, 2011-Ohio-4034, ¶ 6, quoting *Miller* at 74. Accordingly, reversal of a trial court's custody

award is not warranted absent an abuse of discretion. *Id.* An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When an award of custody is supported by a substantial amount of credible and competent evidence, the trial court has not abused its discretion. *See Davis v. Flickinger,* 77 Ohio St.3d 415, 418 (1997). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). Therefore, an appellate court must be guided by the presumption that the findings of the trial court are correct. *In re Jane Doe 1*, 57 Ohio St.3d 135, 138 (1991).

{¶40} When determining the best interest of the child, R.C. 3109.04(F)(1) requires the trial court to consider "all relevant factors" that include, but are not limited to, enumerated factors contained in the statute. The enumerated statutory factors are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child * * * the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments * * * under which that parent is an obligor;

(h) * * * [W]hether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a

member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense * * *;

(i)    Whether the residential parent * * * has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)    Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶41} The trial court stated that it "considered [the R.C. 3109.04(F)(1)] factors" in making Husband the residential and legal custodian of M. The trial court found the following:

(a)    Both parents wish to be the residential parent and legal custodian of [M.].

(b)    [M.] has a good relationship with both sides of his extended family. Husband has custody of a daughter [A.], age 11, from a prior relationship. [M.] and [A.] have a close relationship.

(c)    [M.] is not yet in school or preschool. Husband believes [M.] should be in the childcare program that he used for [A.] Wife uses family for daycare. Husband testified as to his concerns about the maternal grandfather's temper and excessive drinking.

(d)    Both parties are in good mental and physical health.

(e)    Based on Wife's refusal to allow Husband to have companionship time with [M.] during the parties' separation and her non-compliance with the temporary orders, Husband is far more likely to honor and facilitate court-approved parenting time rights or visitation and companionship.

(f)    Husband has made all child support payments even when Wife was not complying with the [c]ourt's temporary orders.

(g)    Wife was the residential parent pursuant to the temporary orders. The [c]ourt heard testimony from the [GAL], and Chris Derry of Common Ground [], that Wife continuously and willfully denied Husband his court-ordered parenting time.

(h)     Wife attempted to defend her actions by pointing to several incidents where [M.] suffered minor injuries. The parties' testimony differed drastically concerning these incidents. However, even Wife's testimony was that [M.'s] injuries were minor and resulted from the type of accidents that occur to most, if not all, young active children.

(i)     [Wife's] use of these incidents to justify her refusal to comply with court orders is of concern to the [c]ourt.

(j)     The [GAL] recommended, based on his investigation, that Husband be [M.'s] residential parent and legal custodian.

(k)     Wife called [M.'s] pediatrician, Dr. Levitan [sic]. On direct examination Dr. [Levatin] testified that [M.'s] heath is "very good"; however, she also testified that she treated him for infections, teething discomfort and anxiety. Dr. [Levatin] practices homeopathic medicine and would only prescribe over-the-counter homeopathic medications. Dr. [Levatin] also testified as to Wife's report of [M.'s] anxiety and Wife reports that [M.'s] contact with Husband was the cause of the anxiety.

(l)     On cross-examination, Dr. [Levatin] acknowledged that her opinion as to the cause of [M.'s] anxiety was solely based on Wife's report.

(m)     Dr. Levatin testified further that she does not provide patients vaccines or inoculations.

(n)     According to the report from [Common Ground] and the testimony of Chris Derry, Wife has been very resistant to Husband having parenting time with [M.].

(o)     Mr. Derry also testified that Wife had placed a recording device in [M.'s] shoe and diaper bag.

(p)     Mr. Derry further reported that Wife would not provide Husband with any information about the medication prescribed for [M.] by Dr. [Levatin].

{¶42} Wife contends that the trial court abused its discretion because the court never mentioned or overlooked certain evidence relating to the statutory best interest of the child factors. Wife appears to be arguing that trial court was required to expressly address in the final decree evidence of: (1) the desire of both parents to have custody of M.; (2) M.'s relationship with Wife and other family members; (3) the child's health; (4) Husband's mental and physical health; (5) evidence that Husband violated the civil protection order when he arrived at Wife's

house for visitation on October 25, 2014; (6) evidence that M. was abused or neglected; (7) the events of March 20 that resulted in Husband being arrested for domestic violence and entering a guilty plea to a lesser charge of disorderly conduct; and (8) Husband's purported history of being abusive to women in relation to his guilty plea to criminal trespass.

{¶43} To the extent that the domestic relations court did not explicitly make findings of fact on some of these factors, it was not required to. We have held that "while [R.C. 3109.04(F)(1)] does mandate consideration of each factor by the trial court, the court need not explicitly reiterate its findings with regard to those factors absent a Civ.R. 52 request for findings of fact and conclusions of law." *Matis v. Matis*¸ 9th Dist. Medina No. 04CA0025-M, 2005-Ohio-72, ¶ 6. Absent a Civ.R. 52 request, it is enough for the trial court's order to state that the court considered the factors enumerated in the statute. *Id.*

{¶44} Here, the domestic relations court stated that it considered the statutory factors. The court took extensive evidence related to the enumerated factors and other relevant considerations over two days. The court heard the testimony of 12 witnesses, including the parties, the GAL, and Mr. Derry. Testimony was given on each of the issues that Wife claims in her assignment of error that the court overlooked or did not address. Wife did not make a Civ.R. 52 request to the court for findings of fact and conclusions of law. Thus, contrary to Wife's claim, the court was not obligated to explicitly address all of the statutory factors and all of the evidence relevant to the custody award.

{¶45} We are mindful that the record in this case contains evidence that falls squarely under R.C. 3109.04(F)(1)(h), one of the factors to be considered by the court in determining the best interest of the child. This factor requires the court to evaluate, among other things, "whether either parent * * * has been convicted of or pleaded guilty to any offense involving a victim who

at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense * * *." R.C. 3109.04(F)(1)(h). Specifically, Wife testified that Husband pushed Wife during the March 20, 2014 visitation with the child, which caused Wife to trip and injure her arm. There is photographic evidence of bruising from the alleged injury. Officer Hendershott also testified and prepared a police report regarding the incident, which is part of the record. Moreover, Husband pled guilty to disorderly conduct after originally being charged with domestic violence in consequence of the incident. Wife received a civil protection order as a result of the confrontation. Husband and Mr. Milne testified at the hearing that Husband did not touch Wife or push her.

{¶46} Husband was not convicted of domestic violence under R.C. 2919.25, which would have obligated the trial court to "make [] specific written findings of fact to support its determination" in awarding custody to the offender. R.C. 3109.04(C). By contrast, there was no requirement that the trial court make explicit findings pursuant to R.C. 3109.04(F)(1)(h) in the absence of a conviction under R.C. 2919.25. *See Matis*, 2005-Ohio-72, at ¶ 6. Nonetheless, issues related to domestic violence and abuse are so fundamental and chronic in child custody matters that the better practice would be for the trial court to expressly set forth its findings under R.C. 3109.04(F)(1)(h) when there is evidence relevant to that provision. However, despite our preference for explicit language with respect to evidence under R.C. 3109.04(F)(1)(h), we find that explicit language was not required and that the trial court did not abuse its discretion in not specifically discussing this factor. *See Matis* at ¶ 6.

{¶47} In this case there are a multitude of contested issues that turned on the credibility of witnesses and evidence, including whether: (1) domestic violence occurred; (2) either parent

was neglectful; (3) Wife interfered with Husband's relationship with the child; (4) Wife properly cared for the health of the child; and (5) Husband suffered from mental or emotional health problems. In awarding custody of M. to Husband, the trial court resolved the greater weight of credibility issues in favor of Husband. We are obligated to treat the trial court's determinations of credibility with the utmost deference. *See Baxter*, 2011-Ohio-4034, at ¶ 6. Where, as here, we have no basis to conclude that the trial court abused its discretion in making credibility determinations, we will not supplant the trial court's judgment with our own.

**{¶48}** In addition, the trial court has discretion to assign weight to the relevant best interest of the child factors depending upon the facts before the court. *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41. In awarding custody to Husband, the trial court here placed considerable weight on evidence of Wife's repeated disobedience of visitation orders and refusal to facilitate a relationship between Husband and the child. Approximately half of the findings discussed in the final decree relate to Wife's conduct in this regard. Having carefully reviewed the record in its entirety, we are satisfied that a substantial amount of credible and competent evidence supports the trial court's findings. Accordingly, we find that the trial court did not abuse its discretion in awarding custody of M. to Husband.

**{¶49}** We have found that the trial court did not abuse its discretion in awarding custody of M. to Husband. On this basis, Wife's third assignment of error is overruled.

Assignment of Error Number One

R.C. 3109.04(F)(1)(F) & (I) IS UNCONSTITUTIONAL BECAUSE IT VIOLATES THE SUBSTANTIVE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND THE TRIAL COURT ERRED IN RELYING ON THAT SECTION.

**{¶50}** In her first assignment of error, Wife argues that R.C. 3109.04(F)(1)(f) and (i) violate the substantive due process guarantees of the United States and Ohio constitutions. We disagree.

**{¶51}** At the outset we must address Husband's claim that this Court may not address Wife's substantive due process claim because she failed to serve the attorney general in accordance with R.C. 2721.12. In relevant part, R.C. 2721.12(A) provides that "when declaratory relief is sought * * * if any statute * * * is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard."

**{¶52}** Contrary to Husband's claim, Wife was not required to serve the attorney general under R.C. 2721.12. The Supreme Court of Ohio has held that the notice requirement of the statute applies only to declaratory judgment actions filed pursuant to Chapter 2721. *Cleveland Bar Assn. v. Picklo*, 96 Ohio St.3d 195, 2002-Ohio-3995, ¶ 6-7. The case at bar was not filed as a declaratory judgment action under Chapter 2721. Thus, there is no procedural bar to our consideration of Wife's constitutional argument.

**{¶53}** Due process protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Accordingly, strict scrutiny must be applied to address Wife's claim that R.C. 3109.04(F)(1)(f) and (i) infringe upon her right to raise M. *See Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 39; *see also Cottrell v. Cottrell*, 12th Dist. Warren No. CA2013-07-065, 2014-Ohio-646, ¶ 20. Applying strict scrutiny, the issue we must decide is whether R.C. 3109.04(F)(1)(f) and (i) are narrowly tailored to promote a compelling government interest. *See Harrold* at ¶ 39, citing *Chavez v. Martinez,* 538 U.S. 760, 775 (2003); *see also Cottrell* at ¶ 20.

{¶54} We find that R.C. 3109.04(F)(1)(f) and (i) promote a compelling government interest. These sections set forth two of the considerations to be weighed in conjunction with the remaining factors of R.C. 3109.04(F)(1) to decide whether an allocation of parental rights is within the best interest of the child. Respectively, these sections generally require the trial court to determine whether (1) one parent is more likely to honor court orders regarding visitation, and (2) whether the residential parent has demonstrated a history of violating court-ordered custodial arrangements. It is well-established that promoting the best interests of children is a compelling government interest. *Cottrell* at ¶ 20.

{¶55} We also find that R.C. 3109.04(F)(1)(f) and (i) are narrowly tailored to serve a determination of the best interest of the child. Wife argues that these sections are not narrowly tailored because they do not account for instances when there is evidence that an abused parent has disobeyed court orders to protect herself or the child from abuse. However, a trial court may not decide the best interest of the child on the basis of R.C. 3109.04(F)(1)(f) and (i) alone, but rather is obligated to weigh those provisions in conjunction with the other factors in the statute. These other factors include R.C. 3109.04(F)(1)(h), which requires the court to determine the best interest of the child having considered evidence related to physical harm caused to the other parent and abuse or neglect of the child. *See* R.C. 3109.04(F)(1)(h). Moreover, R.C. 3109.04(F)(1) mandates consideration of "all relevant factors" to the issue of custody, which would include a parent's reasons for disobeying court orders, if reasons are given. We observe that Wife has not specifically argued in this matter that she disobeyed court orders to protect herself or M. from threatened harm.

{¶56} Apparently relying on the dissent in *Doe v. Delaware*, 450 U.S. 382, 385 (1981), Wife also argues that "[s]ubstantive due process forbids termination of parental rights in the

absence of a demonstration of a compelling state interest, in the form of specific findings of existing or threatened injury to the child." (Wife's emphasis deleted.) Wife's argument is misplaced considering that the case at bar does not involve a termination of parental rights.

{¶57} Accordingly, we find that R.C. 3109.04(F)(1)(f) and (i), considered in conjunction with R.C. 3109.04(F)(1)(h) and the remaining statutory factors, are narrowly tailored to promote the compelling government interest of allocating parental rights in the best interest of the child while observing parents' fundamental right to the care and management of their children. As such, Wife's first assignment of error is not well-taken.

{¶58} We have determined that R.C. 3109.04(F)(1)(f) and (i) do not violate substantive due process. Wife's first assignment of error is overruled on this basis.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT ERRED IN FAILING TO REMOVE THE GUARDIAN AD LITEM BECAUSE HE: (A) FAILED TO PERFORM HIS DUTIES; (B) INTERJECTED HIMSELF INTO A VIOLATING OF A CIVIL PROTECTION ORDER, THUS BECOMING A WITNESS AND (C) COMPLETELY DESTROYED ALL INDEPENDENCE HE MAY HAD [SIC] AND EXPRESSED A PERSONAL BIAS AGAINST THE [WIFE].

{¶59} In her second assignment of error, Wife argues that the trial court erroneously denied her motion to remove the GAL for failure to perform his duties in accordance with Sup.R. 48. We disagree.

{¶60} We review a decision of the trial court declining to remove a GAL for abuse of discretion. *Loewen v. Newsome*, 9th Dist. Summit No. 26960, 2014-Ohio-5786, ¶ 19. The trial court acts within its discretion unless the court's ruling was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶61} Sup.R. 48 governs GAL standards in Ohio. In the present case, Wife first argues that the GAL failed to perform his duties as required by Sup.R. 48(D)(13)(g). The rule states:

A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

* * *

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records[.]

Sup.R. 48(D)(13).

{¶62} Specifically, Wife argues that reversal is warranted because the GAL did not interview Dr. Levatin. However, there is no evidence that the GAL failed to consider information from the pediatrician. Dr. Levatin wrote the GAL a letter and the GAL reviewed Dr. Levatin's website. The GAL obtained the doctor's patient records for M. and discussed them in his testimony at the hearing and in the GAL's report to the court. In addition, Dr. Levatin testified at the hearing and was subject to cross examination. The court thus had the opportunity to consider M.'s medical history and Dr. Levatin's opinion in light of all of the evidence. Under the circumstances, Wife cannot demonstrate any prejudice arising from the GAL's failure to interview Dr. Levatin. Absent prejudice to Wife, we cannot say that the trial court abused its discretion when it declined to remove the GAL for failure to adhere strictly to Sup.R. 48(D)(13)(g). *See In re K.G.*, 9th Dist. Wayne No. 10CA0016, 2010-Ohio-4300, ¶ 20.

{¶63} Wife also argues that the trial court abused its discretion when it did not remove the GAL for a violation of Sup.R. 48(D)(7). Sup.R. 48(D)(7) states:

When a court appoints an attorney to serve as both the guardian ad litem and attorney for a child, the attorney shall advocate for the child's best interest and the child's wishes in accord with the Rules of Professional Conduct. Attorneys who are to serve as both guardian ad litem and attorney should be aware of Rule 3.7 of the Rules of Professional Conduct and act accordingly.

Prof.Cond.R. 3.7(a) provides that, with certain exceptions, "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness."

{¶64} Sup.R. 48(D)(7) does not appear to be applicable in this matter. By its express terms, Sup.R. 48(D)(7) applies to attorneys who are appointed to serve both as the GAL and attorney for the child. Under Sup.R. 48(C)(1), "Each court appointing a guardian ad litem * * * shall enter an Order of Appointment which shall include: (a) [a] statement regarding whether a person is being appointed as a guardian ad litem only or as a guardian ad litem and attorney for the child." Here, the order of appointment states only that Mr. Brightbill was appointed GAL, and does not specify a dual appointment as GAL and attorney. Thus, Mr. Brightbill's actions would not be subject to scrutiny under Sup.R. 48(D)(7).

{¶65} Even if Sup.R. 48(D)(7) applied, Wife's argument lacks merit. She claims that the "GAL injected himself into what would become hotly contested issues at trial, the events that occurred on [October 25, 2014], temporary custody of the minor child, and whether [Husband] violated a [c]ivil [p]rotection [o]rder." Contrary to Wife's contention, the GAL did not "inject himself" into the situation for "no reason." Rather, he attended the scheduled transition of the child consistent with the agreement of the parties. As discussed, counsel for Wife and counsel for Husband attended a conference in chambers and in the presence of the court on October 20. Counsel agreed, as representatives of their respective clients, that Mr. Brightbill would attend and facilitate the transition of the child on October 25. We are not persuaded that the GAL's compliance with the agreement made by Wife's counsel on Wife's behalf is a valid basis to terminate the GAL. Moreover, to the extent that Wife claims that the GAL is a fact witness to whether Husband violated the civil protection order on October 25, she is mistaken. That order

had been dismissed prior to the events in question. Accordingly, the trial court did not abuse its discretion in refusing to dismiss the GAL pursuant to Sup.R. 48(D)(7).

{¶66} Wife also argues that the GAL violated Sup.R. 48(D)(2), (3), and (15) "destroying all independence he may had [sic] and explicitly expressed a personal bias against [Wife]." Under these provisions, the GAL must: (1) remain independent, objective, and fair (Sup.R. 48(D)(2)); (2) act with respect and courtesy to the parties (Sup.R. 48(D)(3)); and (3) shall not make disclosures about the case except as necessary (Sup.R. 48(D)(15)).

{¶67} In essence, Wife complains that the GAL is biased because she disagrees with the court's award of custody to Husband. Her argument lacks merit. We have found that disagreement with the court's ultimate determination of custody does not demonstrate bias, prejudice, or improper action on the part of the GAL. *See King v. King*, 9th Dist. Medina No. 12CA0060-M, 2013-Ohio-3070, ¶ 9.

{¶68} Under these circumstances, we cannot conclude that the trial court abused its discretion in denying Wife's motion to remove the GAL. Wife's assignment of error is overruled.

## III

{¶69} Wife's assignments of error are overruled. The judgment of the Summit County Domestic Relations Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

CEDRIC B. COLVIN, Attorney at Law, for Appellant.

BRUCE L. MIELZINER and KEVIN R. MCMILLAN, Attorneys at Law, for Appellee.