[Cite as *In re A.A.*, 2019-Ohio-902.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE: A.A.

C.A. No.     18AP0035

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.   2017 JUV-G 000118
               2017 JUV-H 000192

DECISION AND JOURNAL ENTRY

Dated: March 18, 2019

HENSAL, Judge.

{¶1}   Angela Tucker appeals a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that granted custody of her daughter A.A. to A.A.'s father, Daniel Adams. For the following reasons, this Court affirms.

I.

{¶2}   Ms. Tucker and Mr. Adams are the parents of A.A., who was born in 2009. For most of A.A.'s life, Mother and Father lived together in a house that is owned by Mother's mother, along with a daughter that Mother had from a prior relationship. In the fall of 2016, Mother told Father that she was no longer in love with him. Father remained living in the house until the end of October, when Mother's mother told him that she was going to start charging rent. He went to live with his nephew, who is raising a girl near A.A.'s age.

{¶3}   Within a few weeks of Father leaving the house, Mother invited a new boyfriend to move in with her. The Child Support Enforcement Agency also began a proceeding to

establish a child support order regarding A.A. Father subsequently filed a complaint for custody or shared parenting. The actions were referred to a magistrate, who held an evidentiary hearing over the course of two sessions. The magistrate issued a decision that awarded custody to Father, which the juvenile court adopted. Mother objected to the magistrate's decision, but the juvenile court overruled her objections. Father also objected to the magistrate's decision, but he failed to address his objections in his memorandum, so the juvenile court overruled them as well. Mother has appealed, assigning four errors. Because she has argued some of her assignments of error together, we will address them together.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FAILURE TO HOLD A HEARING TO REVIEW THE HEARING OFFICER'S CONDUCT IN THE COURT ROOM TOWARD MOTHER OF INAPPROPRIATE, PREJUDICIAL OUTBURSTS AND STATEMENTS, AS WELL AS WHOLLY UNACCEPTABLE QUESTIONING OF WITNESSES INDICATIVE OF EXTREME BIAS TOWARDS MOTHER DURING THE HEARING, IS AN ABUSE OF DISCRETION.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE TO PORTRAY THE CONDITIONS OF THE HOME ONLY TO MOTHER WHEN BOTH MOTHER AND FATHER LIVED THERE TOGETHER, AND THE GUARDIAN AD LITEM REPORTED THAT THE CONDITIONS WERE REMEDIED DURING THE PENDENCY OF THIS CASE.

{¶4} Mother argues that the magistrate exhibited bias against her during the hearing. Mother notes that the magistrate told her that she was appalled by the fact that Mother moved a new boyfriend into her house so soon after Father moved out of the house. The magistrate also told Mother that she believed the action was inappropriate and did not teach A.A. good behaviors. The magistrate also interjected during Father's cross-examination of Mother to ask

whether Father had ever been physically abusive of her or A.A. Mother argues that the magistrate should not have admonished her lifestyle or used it against her because there was no evidence that it had any effect on A.A.

{¶5} Mother also argues that some of the magistrate's factual findings were incorrect. Specifically, she contests the magistrate's finding that she only arranged for A.A. to go to a dentist one time, that she was the only one responsible for the clutter inside her house, that her mother still lived in the house, that she had not given A.A. a chance to develop relationships outside of school, that she had not listed Father as an emergency contact for A.A., and that Father had been participating in outdoor activities with A.A. for years. She also contests the magistrate's finding that she allowed her new boyfriend to move into her home and care for A.A. even though she did not know much about him, that she had almost no work history and relied on the men in her life to support her, that she had not made any plans for the baby she was carrying at the time of the hearing, that she had hoarding issues, and that Father was current as to the temporary support order. Mother argues that the magistrate's improper statements and inaccurate findings demonstrate that the juvenile court should have held a hearing on whether the magistrate should have disqualified herself and on the timeliness of her request.

{¶6} Mother objected to the magistrate's decision, in part, because of the magistrate's alleged bias and inaccurate factual findings. Under Juvenile Rule 40(D)(4)(d), the juvenile court must conduct an independent review of objections to a magistrate's decision. This Court's standard of review, however, is more deferential. We review the juvenile court's ruling on objections to a magistrate's decision for an abuse of discretion. *In re G.E.S.*, 9th Dist. Summit No. 23963, 2008-Ohio-2671, ¶ 8. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219

(1983). Furthermore, "[a]ny claim of * * * error must be based on the actions of the [juvenile] court, not on the magistrate's findings or proposed decision." *Love v. Love*, 9th Dist. Summit No. 22976, 2006-Ohio-3559, ¶ 15, quoting *Mealey v. Mealey*, 9th Dist. Wayne No. 95CA0093, 1996 WL 233491, *2 (May 8, 1996).

**{¶7}** In its ruling on the parties' objections, the juvenile court explained that it had reviewed not only the transcript of the hearing but also listened to the audio recording of the hearing. Regarding the questions that the magistrate asked, the court found that the proceedings became heated at times and that the magistrate calmly stepped in to clarify questions and obtain accurate answers. It found that the magistrate made a couple of comments that made it apparent how she viewed the situation, but that it did not rise to the level that the magistrate was unable to render a fair judgment. The court explained that it had reviewed the magistrate's findings and determined that the magistrate made her decision based on an analysis of the correct factors and while affording the parties equal standing. It found nothing to suggest that the magistrate had misapplied the law or given unfair or undue weight to any particular facts. It also found that the magistrate did not overly favor or antagonize one party over the other and that there was nothing to indicate that the magistrate had an extrajudicial source for bias.

**{¶8}** Regarding whether the magistrate exhibited bias, the United States Supreme Court has explained that

> judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). We have reviewed the sections of the transcript identified by Mother and the audio recording of the hearings and conclude that the

juvenile court did not abuse its discretion when it overruled Mother's objection about the magistrate's alleged bias. As the court explained, the proceedings became heated at times between the lawyers and witnesses. The magistrate interjected to get more direct answers about the topics that were being discussed or to clarify the witnesses' answers. She also expressed unease about the fact that Mother had moved a new partner into her home so soon after A.A.'s father had departed. The magistrate did not berate the witnesses but did express her dissatisfaction with some of the choices Mother had made. There is no indication that the magistrate rendered her decision based on any information that she received from an extrajudicial source.

{¶9} Regarding whether the magistrate's findings of fact were supported by the record, the juvenile court wrote that it had independently reviewed the record and found that the magistrate had "properly considered the pertinent facts and applied the appropriate law." It, therefore, overruled her objection to the magistrate's factual findings. Upon review of the record, we note that, contrary to the magistrate's finding, there was no evidence that Mother was still living with her mother. Instead, it was not disputed that Mother's mother had moved out of the house well before Father moved out. Regarding dental visits, while Mother allowed A.A. to see a mobile dentist at school, she only took A.A. to an independent dentist one time. Thus, the magistrate's finding that Mother only "arranged" for A.A. to go to a dentist one time is not inaccurate.

{¶10} Regarding the clutter in Mother's home, Father testified that the items causing the clutter belonged to Mother and Mother's mother. The clutter continued after Father moved out of Mother's house and has not been a concern at Father's nephew's house. Mother notes that the magistrate found that her mother removed 27 bags of garbage from the house even though her

mother testified that it was 27 bags of clothing, which she donated to a charity. The magistrate's concern, however, was whether 27 bags was enough to fix the conditions in the house, noting that Mother had not submitted any updated photographs of her home.

{¶11} Regarding whether Mother gave A.A. an opportunity to develop friendships outside of school, while Mother is correct that A.A. has pursued some extra-curricular activities and was not old enough to join a softball team, the record reflects that Mother had not helped A.A. introduce herself to other children in Mother's neighborhood. She also had not pursued any other new activities for A.A. since Father moved out of her home. Regarding emergency contact information, Mother does not deny that she did not list Father as an emergency contact person for the latchkey program. She points out that she included Father's information elsewhere on the registration form, but that does not make the magistrate's finding inaccurate. Regarding whether Mother has allowed her new boyfriend to care for A.A., Mother contends that she has never left A.A. alone in his care. The magistrate, however, made the reasonable inference that, considering Mother's work schedule and that fact that Mother's boyfriend lives in the house, it is likely that he has been left to care for A.A. at some point in time.

{¶12} Regarding how much Mother knew about her boyfriend before allowing him to move in, Mother asserts that she met him in 1993. She admitted that they lost touch for a long time, however, and she did not inquire much into what he had been doing in the interim when they reconnected, explaining that, in her view, the past is the past. Mother also did not know or had trouble remembering details about her boyfriend and his family. Regarding Mother's work history, the record supports the magistrate's finding that Mother did not have an extensive work history and did not earn enough to support herself and her children without contributions from Father or her new boyfriend. Regarding Mother's plans for her unborn child, although she

contends that the hearing occurred too early in her pregnancy for such plans to be necessary, she has not pointed out anything inaccurate in the magistrate's finding that she had not made any plans yet. Finally, regarding whether Father was current with the temporary child support order, Father testified that money was being withheld from his paychecks for child support. Mother has not pointed to any evidence in the record that established that Father was behind in his support payments.

{¶13} Upon review of the record, we conclude that the juvenile court correctly determined that the "pertinent facts" found by the magistrate were supported by the record. Accordingly, we conclude that the court exercised appropriate discretion when it overruled Mother's objections without holding a further evidentiary hearing. Mother's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT'S DECISION TO CHANGE CUSTODY OF THIS CHILD TO FATHER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF ITS DISCRETION.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S DECISION IS AN ABUSE OF ITS DISCRETION WHEN IT IS IN DIRECT OPPOSITION TO THE RECOMMENDATIONS OF THE GUARDIAN AD LITEM REPORT WITHOUT EVIDENCE OR EXPLANATION AS TO WHY THE GUARDIAN AD LITEM'S WORK, FINDINGS AND RECOMMENDATIONS WERE IGNORED BY THE HEARING OFFICER.

{¶14} Mother next argues that the juvenile court incorrectly awarded custody of A.A. to Father, noting that the guardian ad litem recommended that the court award custody to her. Mother argues that A.A. has a close relationship with her older sister and was anticipating the arrival of Mother's third child. She argues that the magistrate failed to discuss those relationships in her decision. Mother also argues that A.A. has always gone to the school near

where Mother lives, that there was no evidence that she has a hoarding mental health problem, that Father was just as responsible for the condition of the house while he lived there, that Father contributed to the clutter by leaving belongings in the house when he moved out, that the amount of clutter in the house was not so great as to render its condition "deplorable[,]" that conditions had improved when the guardian ad litem visited the house just before the hearing, that Father has never taken A.A. to a medical appointment, that Father has never taken a sick day to care for A.A., and that Father is also a smoker.

{¶15} "When allocating parental rights and responsibilities, the court must take into account the best interest of the children." *Bentley v. Rojas*, 9th Dist. Lorain No. 10CA009776, 2010-Ohio-6243, ¶ 19, citing R.C. 3109.04(B)(1). In determining the best interest of the children for purposes of allocating parental rights and responsibilities, a court must consider the factors listed in R.C. 3109.04(F)(1). *Patton v. Hickling–Patton*, 9th Dist. Medina No. 13CA0071-M, 2014-Ohio-2862, ¶ 8. Those factors include: (1) the wishes of the children's parents; (2) the wishes of the children, if the court interviews the children; (3) the children's interaction and interrelationship with their parents, siblings, and anyone else who may significantly affect their best interest; (4) the children's adjustment to home, school, and community; (5) the mental and physical health of all persons involved; (6) the parent more likely to honor and facilitate court-approved parenting time rights; (7) whether either parent has failed to make child support payments; (8) whether either parent or any household member previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; (9) whether one of the parents has continuously and willfully denied the other's right to parenting time; and (10) whether either parent has established a

residence, or is planning to establish a residence, outside Ohio. R.C. 3109.04(F)(1)(a)–(j). The court must also consider any other relevant factors. R.C. 3109.04(F)(1).

{¶16} "A trial court possesses broad discretion with respect to its determination of the allocation of parental rights and responsibilities, and its decision will not be overturned absent an abuse of discretion." *Kokoski v. Kokoski*, 9th Dist. Lorain No. 12CA010202, 2013-Ohio-3567, ¶ 26. When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). "[A] trial court's determination in custody matters 'should be accorded the utmost respect' because '[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *Baxter v. Baxter*, 9th Dist. Lorain No. 10CA009927, 2011-Ohio-4034, ¶ 6, quoting, *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶17} Although a juvenile court's decision regarding allocation of parental rights will not be overturned absent an abuse of discretion, an appellate court reviews the juvenile court's factual findings under a manifest weight of the evidence standard. *See Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487, ¶ 10 (9th Dist.).

> [B]efore an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse.

*Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10. Manifest weight of the evidence pertains to the burden of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶18} In her decision, the magistrate worked through each of the best-interest factors listed in Section 3109.04(F)(1). She found that both parents wanted to be the residential parent and that, although A.A. was not interviewed, the guardian ad litem had indicated that A.A.'s relationship with both parents was positive. She found that, although A.A. is loved by all her family members, she was getting left behind in Mother's household, which would only get worse when Mother's third child arrived. She found that Mother had not attended to all of A.A.'s social, educational, medical, dental, and counseling needs, had not followed some court orders, and had not accepted the recommendations made to her by experts. Father, on the other hand, had attended to all of A.A.'s needs and was receptive to the recommendations made to him. The magistrate found that A.A. was well-adjusted in Father's home. If A.A. resided with Mother, however, her social interactions would be limited by the condition of Mother's home. The magistrate found that, considering the duration of the problems at Mother's home, those conditions were unlikely to change. She was concerned that A.A. would learn to consider those conditions normal. The magistrate also found that, because A.A. was not in many school activities and did not have many friends, she could easily transition to a new school.

{¶19} The magistrate found that Father was current in his child support payments. She found that, although the parties did not have any criminal history, it was unknown whether Mother's new boyfriend had a criminal history and noted that Mother had failed to investigate whether he did. She found that the factors concerning whether a party had denied parenting time and whether a party was planning to move out of state were not applicable. Regarding other relevant factors, the magistrate found that Mother was not sufficiently organized to meet A.A.'s needs and was blind to faults she might have, which had resulted in A.A. being denied social

opportunities and health care. The magistrate concluded that, in light of there being other options, it would not be in A.A.'s best interest for Mother to be the residential parent.

{¶20} The juvenile court, which adopted the magistrate's decision, was not bound by the recommendation of the guardian ad litem. *In re. J.P.-M.*, 9th Dist. Summit Nos. 23694, 23714, 2007-Ohio-5412, ¶ 63. We have reviewed the record and conclude that the court's findings of fact regarding the best-interest factors are not against the weight of the evidence. We also conclude that the court exercised appropriate discretion when it determined that Father should be designated A.A.'s residential parent. Mother's third and fourth assignments of error are overruled.

III.

{¶21} Mother's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

───────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

RENEE J. JACKWOOD, Attorney at Law, for Appellant.

LORRIE FUCHS, Attorney at Law, for Appellee.