[Cite as *Irish v. Irish*, 2011-Ohio-3111.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

CRYSTAL IRISH

    Appellant

    v.

GEORGE IRISH, JR.

    Appellee

C.A. No.      10CA009810

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    03DU062121

DECISION AND JOURNAL ENTRY

Dated: June 27, 2011

---

MOORE, Judge.

**{¶1}** Appellant, Crystal Irish, appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. This Court reverses and remands with instructions.

I.

**{¶2}** Plaintiff-Appellant, Crystal Irish ("Mother"), and Defendant-Appellee, George Irish, Jr. ("Father"), were granted an uncontested divorce on April 2, 2004. The parties have three unemancipated children. Pursuant to the decree of divorce, the trial court adopted a shared parenting plan and determined that, subject to further order of the court, neither party was to pay child support. The reasons stated in the divorce decree for not ordering child support included the parties' equal possession time with the children, their relatively similar incomes, Father's obligation to pay the cost of tuition, and Father's additional financial contributions. At the time of the divorce, Father earned $42,000 and Mother earned $37,500.

**{¶3}** Father subsequently filed a motion seeking to terminate shared parenting and grant him custody. Father's motion was resolved by agreement of the parties on May 20, 2008. Pursuant to that agreement, the court modified the shared parenting plan to alter the parties' possession time and to provide child support to Mother.

**{¶4}** The court determined that Father would pay Mother $158.14 in monthly child support, which represented an 80% deviation from the child support guidelines of $768.07. The Child Support Computation Worksheet attached to the journal entry stated that 50% of the deviation was due to the amount of time the children spent with their Father. The remaining 30% was not accounted for on the worksheet. The parties both signed that they had reviewed the worksheet and agreed to it. At the time of this modification, Father's annual income was $45,054 and Mother's was $26,000. The trial court expressly stated that all matters resolved by the parties were subject to further order of the court.

**{¶5}** On September 5, 2008, Mother filed a motion to modify child support and for clarification of ambiguities in the parties' shared parenting plan. In her motion, Mother alleged that there had been a change in circumstances and that a deviation from the child support guidelines was no longer appropriate. While her motion was pending and prior to the hearing before the magistrate, Mother lost her employment. At the time of the hearing on December 10, 2008, Mother was receiving unemployment compensation in the amount of $187 per week, $9724 per year, and Father's earnings had increased from $45,054 to $51,000 per year.

**{¶6}** Based on the evidence presented at the hearing, the magistrate ran a new Child Support Computation Worksheet. She entered Father's annual gross income as $51,000 and Mother's as $0.00, but she imputed $14,560.00 to Mother because the magistrate considered her to be voluntarily unemployed. The magistrate found that the annual support obligation per

parent varied from the previous worksheet in excess of 10%, constituting a change in circumstance substantial enough to modify the child support amount pursuant to R.C. 3119.79. The child support guidelines set Father's support obligation at $919.31 per month. The Magistrate determined that a deviation from that amount was appropriate. Specifically, she concluded that the parties were "bound" by the May 20, 2008 journal entry which included an 80% downward deviation based, in part, on the extended parenting time spent by Father. Accordingly, the magistrate reasoned that the only "legally relevant" change in circumstances to warrant abandoning the agreed upon 80% deviation would be a change in parenting time. Applying the 80% deviation, Father's child support obligation was reduced to $183.87 per month. The trial court adopted the magistrate's decision.

{¶7} On January 26, 2009, Mother filed a motion pursuant to Civil Rule 60(B) to vacate the May 20, 2008 judgment. The trial court overruled Mother's motion. Mother appealed both the judgment as to child support and the judgment overruling her Civ.R. 60(B) motion. The appeals were consolidated for this Court's review. On February 8, 2010, this Court issued a Decision and Journal Entry in which it reversed and remanded the child support modification to the trial court. *Irish v. Irish*, 9th Dist. Nos. 09CA009577 & 09CA009578, 2010-Ohio-403. This Court concluded that the trial court erred when it deviated 80% from the child support guidelines based on the parties' May 20, 2008 agreement. By relying only on the agreement, the trial court failed to consider the statutory factors for deviation set forth in R.C. 3119.23. The judgment was reversed and the case was remanded to the trial court.

{¶8} On remand, the judge "reconsider[ed] the evidence" from the December 10, 2008 hearing, completed a new child support worksheet, and entered a judgment entry. In the judgment entry, the judge listed each of the sixteen factors set forth in R.C. 3119.23 and each of

the four extraordinary circumstances set forth in R.C. 3119.24. After it determined that some of those factors were "potentially relevant" based on the evidence presented at the hearing, and after it analyzed those factors and circumstances, the court determined that Father was entitled to a downward deviation of 50% based on the time he has the children. In addition, he was entitled to a $75 reduction per month for uncovered monthly healthcare expenses and a $138 reduction for orthodontia care for one child. The final amount ordered was $257.38 per month. Mother has appealed this decision and has argued that the magistrate should have issued an initial decision for the trial judge to review and that deviation was not appropriate.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN NOT HAVING THE MAGISTRATE ISSUE A DECISION AFTER THE MATTER WAS REMANDED FROM THE COURT OF APPEALS."

{¶9}    In her first assignment of error, Mother has argued that the magistrate who heard the evidence in the December 2008 hearing should have issued the decision, and that the judge should have reviewed the magistrate's decision before crafting her own order. This Court disagrees.

{¶10}   Civ.R. 53 allows the court to give a magistrate a significant range of authority, but it places upon the court the ultimate authority and responsibility over the magistrate's findings and rulings. *Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504. The findings of fact, conclusions of law, and other rulings of a magistrate before and during trial are all subject to the independent review of the trial judge. Thus, a magistrate's oversight of an issue or even an entire trial is not a substitute for the judicial functions, but serves only as an aid to them. Even if the magistrate had issued her own report, the trial court could not elevate that decision to the status of a judicial act

by simply adopting it. *Berthelot v. Berthelot,* 9th Dist. No. 22819, 2006-Ohio-1317, at ¶22. The trial court must issue its own order that contains the statutory findings necessary for a child support determination. Id. Accordingly, the trial court was not in error when it entered a judgment entry. This assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN DEVIATING FROM THE CALCULATED CHILD SUPPORT AMOUNT."

{¶11} In her second assignment of error, Mother has argued that trial court abused its discretion when it deviated from the annual obligation as calculated in the Child Support Computation Worksheet. This Court agrees.

{¶12} The trial court stated that it deviated from the annual obligation amount based on Father's actual parenting time and monthly healthcare expenses. Mother has argued that the court abused its discretion in deciding to deviate from the statutory amount of childcare. Specifically, she has argued that because of the disparity of income between the parties and her inability to meet the basic needs of the children, the decision to deviate was not in the children's best interest.

{¶13} The purpose of child support is to meet the needs of the minor children. *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, at ¶10, citing *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 183, fn. 1. Those needs include, shelter, food, clothing and ordinary medical care. See *In re Marriage of Stearns* (1993), 88 Ohio App.3d 264, 275. The child support system is designed to protect the children and their best interests. *Richardson v. Ballard* (1996)*,* 113 Ohio App.3d 552, 555. The legislature has, in effect, "assigned the court to act as the child's watchdog in the matter of support." *DePalmo v. DePalmo* (1997), 78 Ohio St.3d 535, 540.

{¶14} R.C. 3119.022 governs the procedures for awarding and calculating child support. Its provisions are mandatory in nature and must be followed literally and technically in all material aspects because, as stated previously, the overriding concern is the best interest of the children for whom the support is being awarded. When it first awards child support, the court must calculate the amount in accordance with the statutory schedule and the applicable worksheet through the line establishing the "[a]ctual annual obligation." R.C. 3119.022. The annual obligation is the amount required to care for the children for the year and is derived from the total incomes of the parents and the number of children. *Frey v. Frey*, 3d Dist. No. 5-06-36, 2007-Ohio-2991, fn 5.

{¶15} A parent may seek to modify an existing child support order pursuant to R.C. 3119.79. If a court determines that modification is warranted, it shall use the same worksheet as it would for an original order and determine the new amount "in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation." R.C. 3119.79.

{¶16} There is a rebuttable presumption that the annual obligation calculated using the child support worksheet is the amount of child support that should be awarded. R.C. 3119.03; see *Marker v. Grimm* (1992), 65 Ohio St.3d 139 (construing previous, analogous version of R.C. 3119.79). The party who seeks to rebut the presumption and asks the court to deviate has the burden of proof. *Murray v. Murray* (1999), 128 Ohio App.3d 662, 671. Specifically, that party must provide facts from which the court can determine that the actual annual obligation is unjust or inappropriate and would not be in the children's best interest. Id.

{¶17} Two statutes provide guidance as to factors a court can consider when evaluating the evidence offered by the party seeking a deviation. In cases where there is a shared parenting

order, R.C. 3119.24 applies. It provides that a court may deviate from the actual annual obligation if "that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code." R.C. 3119.24(A)(1). The statute requires the court to consider the extraordinary circumstances of the parents in a shared parenting situation because both parties are considered the residential parent at all times. It defines extraordinary circumstances of the parents to include the amount of time the children spend with each parent, the ability of each parent to maintain adequate housing for the children, and the amount of expenses each parent sustains, including medical and dental expenses. R.C. 3119.24(B)(3). Although the court has discretion to deviate from the annual amount as calculated in the worksheet, it must consider these circumstances to do so.

{¶18} R.C. 3119.23 provides an additional 16 factors potentially relevant to granting deviation. Unlike the circumstances provided in R.C. 3119.24 that the court *must* consider, R.C. 3119.23 sets out factors with the directive that the court *may* consider any of the following of them. Those factors include

"(A) Special and unusual needs of the children;

"(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

"(C) Other court-ordered payments;

"(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;

"(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;

"(F) The financial resources and the earning ability of the child;

"(G) Disparity in income between parties or households;

"(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;

"(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

"(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

"(K) The relative financial resources, other assets and resources, and needs of each parent;

"(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

"(M) The physical and emotional condition and needs of the child;

"(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

"(O) The responsibility of each parent for the support of others;

"(P) Any other relevant factor."

{¶19} If the trial court determines that the presumption has been overcome by the evidence, it may deviate from the annual obligation amount. R.C. 3119.22. It must, however, enter in the journal the actual annual obligation, a determination that the amount would be unjust or inappropriate and not in the best interests of the child, and findings to support that determination. Id. Those findings would be expected to explain why the worksheet amount is unjust, inappropriate and not in the best interests of the child. *Berthelot* at ¶24. They must also "explain correspondingly why a downward deviation * * * would be just, appropriate and in the

best interests of the children in the context of [the] case and the financial situation of [the] parties." Id.

{¶20} On appeal of a trial court's child support order, a reviewing court applies the abuse of discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶21} In this case, Mother sought to modify the child support order granted on May 20, 2008. After the case had been remanded once from this Court, the trial court judge completed a new child support worksheet. The resulting figure of $940.76 per month for Father's annual obligation was more than ten percent greater than the amount of child support ordered in the May 20, 2008 order. Thus, there was a substantial change of circumstances justifying a motion to modify. R.C. 3119.79(A); see *DePalmo*, 78 Ohio St.3d at 539-40.

{¶22} When the court determined that the actual annual obligation according to the worksheet was $940.76 per month, it then chose to deviate from that amount. After reviewing the testimony and exhibits from the December 10, 2008 magistrate's hearing, the trial court made the determination that ordering Father to pay the full amount "without appropriate deviations would be unjust, unfair, inappropriate and not in the best interests of the children or the parents." This is not, however, the language of the statute. Although deviation in a shared parenting situation does require a finding that the presumptive amount would be unjust, unfair, or inappropriate to one parent, it requires a separate finding that awarding the presumptive amount would not be in the best interest of the children. In this case, the court mistakenly determined that it was not in the best interests "of the children *or the parents*." (Emphasis added).

{¶23} Moreover, this finding was not based on the evidence established in the hearing. The trial court decided to deviate from the annual amount because of the amount of Father's parenting time and because of his monthly healthcare expenses for the children. Although Father's testimony led the court to conclude that both parties are on a strict budget, he did not produce evidence that it was in the children's best interest for the court to deviate from the presumed child support amount given the discrepancy between their incomes.

{¶24} In addition to the threshold determination that deviation is in the children's best interest because of the extraordinary circumstances of the parents or other factors, there must be factual findings to support that conclusion. In its journal entry, the trial court restated the extraordinary circumstances set forth in R.C. 3119.24 and the factors set forth in R.C. 3119.23. The trial court then expressly considered the extraordinary circumstances and factors it deemed relevant based upon the evidence presented at the hearing: parenting time, ability to provide housing, disparity of income, benefits from remarriage or shared living expenses, in-kind contributions, and relative resources. It based its decision to deviate on the extraordinary circumstances of parenting time and healthcare expenses.

A. Parenting Time

{¶25} Mother has argued that Father presented no evidence in support of deviation other than that their parenting time was split 50/50. She has claimed he did not overcome the presumption that the annual amount was correct because the disparity of their income and relative financial resources, when coupled with the children's needs and her inability to provide housing, outweighed consideration of the parenting time schedule.

{¶26} The trial court determined that Father's parenting time constituted an extraordinary circumstance. This Court notes, however, that even though a shared parenting plan

is involved, "no automatic credit in the support order for the time the child(ren) reside with that parent is warranted." *Spencer v. Spencer*, 5th Dist. No. 2005-CA-00263, 2006-Ohio-1913, at ¶44, citing *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390. The mere fact that a factor is present is not determinative. *Mitchell v. Mitchell*, 11th Dist. No. 2009-L-124, 2010-Ohio-2680, at ¶28.

**{¶27}** At the hearing on Mother's motion to modify, both parties agreed that Father has the children at least 50% of the time in accordance with the terms of the shared parenting plan. In addition, the court heard testimony regarding the costs associated with that care, such as food and clothing. The court concluded that the time caring directly for the children and the cost of their clothing justified a 50% deviation. In effect, the court concluded that half of the children's needs were being met by Father. The trial court failed, however, to properly consider that circumstance along with the Mother's ability to provide adequate housing, despite express evidence on that point.

**{¶28}** This Court has stated that "one cannot discount the traditional principles that oversee all grants of child support." *Ohlemacher v. Ohlemacher*, 9th Dist. No. 04CA008488, 2005-Ohio-474, at ¶34. Those traditional principles provide that each parent has a common law duty to support the minor children by providing "necessaries" such as food, clothing, shelter, and medical care. *Kulcsar v. Petrovic* (1984), 20 Ohio App.3d 104, 105. When determining the necessary and reasonable amount of child support, a court should consider the children's current needs. *Ohlemacher* at ¶32. In support of her motion to modify, Mother presented a budget to the trial court which reflects that she cannot meet the children's needs at her home with the deviation in place.

**{¶29}** Mother's basic monthly budget was $2,010.00, not including credit card debt which she claimed was incurred for the children's expenses. Her income from unemployment

was $748.00 per month, leaving a monthly deficit of $1262.00. The evidence of her monthly shortfall was not in dispute. It was unreasonable for the trial court to conclude that she could continue to provide the bare necessities for her children on this income.

{¶30} Although the trial court looked to whether Mother could maintain adequate housing as required by R.C. 3119.24, it concluded that the "bulk of the evidence" demonstrated that she could do so. The facts elicited at the hearing were that Mother rented a home from her stepfather. The monthly amount of her rent was $735, which was the amount of the stepfather's mortgage payment. Mother testified that she had to borrow money from her mother to pay the rent on at least one occasion. Based on her testimony, under the current support plan if she were to only pay her mortgage payment every month, it would leave her with $13 for every other expense associated with providing housing and raising three boys. This cannot be in the children's best interest.

{¶31} In the face of this testimony, the trial court noted that "no evidence was presented that suggested [Mother's] financial situation would cause her and her children to become homeless due to non-payment of rent." We conclude that it was arbitrary and unreasonable for the court to suggest that the stepfather must evict Mother in order for her to demonstrate that she could not provide housing. While the trial court properly noted that her stepfather owned the house, there was no evidence that Mother did not have to pay rent or that the rent was unreasonable. In addition, the trial court stated that she was providing for her children, in effect, by receiving food stamps and free lunch programs from the school. Because these items can not be considered to impute income to compute the worksheet, they should not be used to impute a measure of providing care to her children. See R.C. 3119.01(C)(7)(a). But for these programs,

Mother testified that she could not feed her children and that it was particularly difficult to feed them over the weekends when she did not have access to school breakfasts and lunches.

{¶32} As for the other factors, both parents testified that they had incurred credit card debt for childcare expenses, but neither parent submitted evidence of the particulars of those expenses. Although Mother urged the court to take into consideration the fact that Father had remarried, she did not focus on the fact that her boyfriend "spends the majority of time at her house[,]" as the trial court noted. While the trial court did not err in not calculating the additional monies potentially brought to the households by other parties, it abused its discretion in failing to consider the Mother's inability to meet the needs of the children while in her care. It is not a question of equalizing incomes or satisfying standard of living requirements, but of providing necessities for the children such as food and shelter.

## B. Medical and Orthodontia Expenses

{¶33} Mother has also argued that the trial court incorrectly deviated based on the healthcare expenses incurred by Father. This Court agrees as it pertains to medical expenses and remands with instructions regarding the orthodontia expenses.

{¶34} The annual obligation inherently includes only ordinary medical care. R.C. 3119.05(F) provides that the court shall "issue a separate order for extraordinary medical expenses or dental expenses, including but not limited to, orthodontia * * * and other expenses, and may consider the expenses in adjusting a child support order." "Extraordinary medical expenses" include "uninsured medical expenses incurred for a child during a calendar year that exceed one hundred dollars." R.C. 3119.01(C)(4).

{¶35} In this case, the trial court had previously ordered Father to pay 100% of uninsured medical expenses and 100% of extraordinary medical and dental expenses. In its

order modifying child support, the trial court expressly considered the medical expenses Father was paying and used them as a basis to deviate downward $75 per month. It noted that Father paid all uninsured medical expenses and that there was "undisputed evidence" that asthma inhaler refills for one child plus the other uncovered medical expenses for all the children averaged $75.00 per month, or $900 per year. It did not set forth facts, however, explaining why it was in the children's best interest for the court to deduct this from the annual obligation, as is required to support deviation, especially when there was uncontroverted testimony that Mother did not have enough monthly income to provide the necessities of housing and food.

{¶36} The trial court separately considered the orthodontia payments, which are considered an extraordinary medical expense. This Court agrees that the trial court was within its discretion to consider this issue, and that there was a factual basis given the extra monthly cost incurred by Father over and above ordinary medical support and the child's need for braces. In addition, there was testimony that Father had to pay an additional sum up front, and that amount was not factored into the court's analysis.

{¶37} This Court disagrees, however, with the trial court's treatment of the expense as if it had no end date. The record evidence reflects that the estimate for treatment was written on November 3, 2008. The estimate reflects that a down payment of $1,078.13 was to have been made and that treatment would continue at a fee of $138 a month for 18 months. The transcript did not reflect that the treatments had started. It also did not limit the downward departure of $138 to an 18-month period. Accordingly, while the trial court did not abuse its discretion when it used this as a basis to deviate, this issue will be remanded to the trial court to modify its order to reflect whether the payments are, in fact, being made, and to either set a finite term for the use

of this item for deviation or to instruct the parties how to proceed when the orthodontia payments have ended.

## III.

**{¶38}** In this case, the judge did not commit error when she independently reviewed all the evidence and wrote an order without first having the magistrate draft her own decision. Mother's first assignment of error is overruled.

**{¶39}** The trial court was, however, required to analyze Father's equal time parenting and his payment of medical expenses against Mother's ability to provide housing, in light of the evidence presented. It was then required to set forth the specific facts from which it concluded that awarding the annual obligation amount was not in the children's best interest. It was unreasonable for the court to conclude, as it did, that it was in the best interest of the children to deviate from the guideline and award less when Mother's income would not allow her to pay rent for her home.

**{¶40}** Mother's second assignment of error is sustained. The case is remanded with instructions for the trial court to enter the presumed amount of $940.76 per month (when insurance is provided) as set forth in the worksheet and a clarification in its order as to the beginning and duration of the orthodontia payments, which it may then use to deviate from the presumed amount.

Judgment reversed,
and cause remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CONCURS

WHITMORE, J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶41} I concur in the judgment only and write separately because I disagree with the majority's conclusion that, based on the record before us, Father should not be awarded *any* deviation from the calculated amount of child support.

{¶42} This Court and others have routinely affirmed deviations to the calculated amount of child support based on the nearly equal parenting time shared between a mother and father. See, e.g., *Misty R. v. Brian S.*, 6th Dist. No. WD-02-029, 2003-Ohio-1413, ¶19-30 (affirming the trial court's decision to reduce child support from the calculated amount of $800 to $500 based on the equal parenting time shared by parents); *Dunlap v. Dunlap*, 9th Dist. No. 23860, 2008-

Ohio-3201, at ¶8-10 (affirming a twenty-eight percent deviation from the calculated support amount based on evidence that husband's visitation time equaled twenty-nine percent of the available time within a year). I acknowledge, however, that such a deviation is not "automatic" in these situations. *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390. Given the facts of this case, however, I would not conclude that Father is not entitled to *any* degree of deviation from the calculated amount of child support. See e.g., *Clay v. Clay* (July 19, 1995), 9th Dist. No. 17014, at *3 (affirming the trial court's decision to award a twenty-five percent deviation, even though the parents shared "approximately equal [parenting] time" with the parties' three children).

{¶43} When this matter was before the magistrate in the first instance, the magistrate found Mother voluntarily unemployed and imputed an income of $14,560 to her, presumably in light of her historical earnings of $37,500 in 2004 and $26,000 in 2007. On appeal, we concluded that the trial court failed to make a specific factual finding of voluntary unemployment and remanded the case. *Irish v. Irish*, 9th Dist. Nos. 09CA009577 & 09CA009578, 2010-Ohio-403, at ¶10 (concluding that "[a] statement that the magistrate did not commit a legal error is not equivalent to making a specific factual finding [of voluntary underemployment]"). On remand, however, the trial court appears to have abandoned its initial position that Mother was voluntarily unemployed for purposes of support. Instead, the trial court recorded Mother's income as $9,724 based solely on her receipt of unemployment compensation and did not make any corresponding finding of fact that she has the ability to earn more than that amount (i.e., that she was voluntarily underemployed). The court refrained from imputing income to Mother, but in evaluating the financial situation of the parties, determined that a reduction in the calculated amount of support was warranted. I consider the trial court's decision not to impute income, but to deviate from the calculated amount of support instead, as

an exercise within its discretion under R.C. 3119.23 and R.C. 3119.24. Though I consider the trial court's decision to award Husband a fifty-percent deviation based on the facts in the record to be an abuse that discretion, I disagree with the conclusion that he is not entitled to *any* deviation, as the majority concludes. Moreover, I consider the precise calculation of support and the determination as to the degree of deviation to be matters best decided by the trial court, not ones imposed by this Court. As much as we have stated that "[t]his Court may not ignore the fact that a trial court is in a better position to determine the equities of a case in relation to a shared parenting plan and the best interest of the children[,]" I believe this is what the majority has done in its decision to dictate the exact dollar amount of support to be awarded here, rather than simply remand this matter to the trial court for reconsideration of this issue. *Hansen v. Hansen* (Jan. 28, 1998), 9th Dist. No. 2691-M, at *2.

{¶44} Additionally, I consider the trial court's order to contain ample findings of fact to support its decision to award a downward deviation for the uncovered prescription drug costs for one of the children's asthma medication and other uncovered medical expenses. The evidence revealed that those expenses totaled nearly $900 per year, which I would conclude fits well within the definition of "extraordinary medical expenses" under R.C. 3119.01(C)(4) (defining that term as "any uninsured medical expenses incurred for a child during a calendar year that exceed one hundred dollars"). Consequently, I would consider it a permissible adjustment to the child support amount under either R.C. 3119.05(F) or R.C. 3119.24(B)(3). Accordingly, I would not require any findings beyond that to support the trial court's deviation in that regard. I would reverse, however, on the basis of the indefinite nature of the orthodontia expense accounted for in the trial court's deviation.

{¶45} For these reasons, I concur in judgment only.

APPEARANCES:

PAULETTE J. LILLY, Attorney at Law, for Appellant.

PATRICK D. RILEY, Attorney at Law, for Appellee.