[Cite as *Michael v. Michael*, 2021-Ohio-992.]

STATE OF OHIO       )
                    )ss:
COUNTY OF WAYNE    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

HAILEY MICHAEL

    Appellee

v.

CHRISTOPHER M. MICHAEL

    Appellant

C.A. No.     20AP0010

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2018 DR-A 00257

DECISION AND JOURNAL ENTRY

Dated: March 29, 2021

CALLAHAN, Presiding Judge.

{¶1}    Defendant-Appellant, Christopher Michael ("Father"), appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2}    Father and Plaintiff-Appellee, Hailey Michael ("Mother"), met in January 2015 when they both resided in Virginia. Mother became pregnant with their first child a few months later, and the two agreed to marry. From then on, however, the two rarely cohabited. Father soon moved several hours away to accept an employment opportunity. Meanwhile, Mother experienced a difficult pregnancy and came to Ohio to be with her family. After the birth of their daughter, C.M., in January 2016, Mother remained in Ohio for four months without Father. When her maternity leave ended, she and C.M. returned to Virginia where Mother served as a sailor in the Navy.

{¶3} Father was still residing elsewhere when Mother came back to Virginia, but he returned in May 2016 to live with Mother. A few weeks later, Mother began her sea duty tour. Her sea duty tour required her to be away for either days or weeks at a time. Though Father would watch C.M. during Mother's shorter tours, C.M.'s maternal or paternal grandmothers in Ohio would care for her when Mother was gone for longer stretches. According to Mother, Father asked that the grandmothers care for C.M.

{¶4} Mother and Father lived together in Virginia for a few months before Mother discovered she was pregnant with their second child. By then, their relationship had soured, and Mother indicated that she wanted a divorce. Though the parties continued to live together for several months, they frequently argued and discussed ending things. Mother ultimately left Father about a month before her due date, and she and C.M. came back to Ohio to live with her mother.

{¶5} Two months after Mother's departure, Father left Virginia and moved to Wisconsin. According to Father, Mother led him to believe they could reconcile if he transferred to Wisconsin, with the eventual goal of returning to Ohio. Because he was a federal employee for the Department of Veteran Affairs, Father was somewhat limited in his ability to secure a job in a specific geographical area. He indicated that Mother agreed the Wisconsin position would suit their family's needs and be a stepping-stone to a position in Ohio when one became available. It was Mother's position, however, that she never intended to relocate to Wisconsin with Father and was clear about her wish for a divorce.

{¶6} The parties' second daughter, M.M., was born in June 2018, one month after Mother returned to Ohio. Two months later, Mother filed for divorce. Father was already living in Wisconsin at the time and remained there for about a year while searching for employment that

would allow him to live closer to the children. During the pendency of the divorce proceedings, he moved to Ohio and obtained a job in Pennsylvania.

{¶7} A magistrate issued temporary orders, naming Mother residential parent and legal custodian and ordering Father to pay $2,541.33 per month in child support. Father filed numerous motions, seeking emergency custody of the children, increased visitation, and visitation on behalf of his parents. He also asked the court to modify its support orders on the basis that Mother had misrepresented her income and her childcare expenses. Mother opposed any changes in the temporary orders and sought a restraining order due to the frequency and tone of Father's communications. Upon review of their respective motions, the court left the temporary orders in place, ordered the parties to communicate via Our Family Wizard, and appointed a guardian ad litem to make a recommendation about the best interests of the children.

{¶8} A divorce hearing was held before a magistrate with Mother asking to be named residential parent and legal custodian and Father asking the court to order shared parenting with equal parenting time. Following the hearing, the magistrate issued a decision, naming Mother residential parent and legal custodian and ordering Father to pay $1,972.15 per month in child support, plus processing fees. The trial court then entered judgment upon the magistrate's decision, consistent with the magistrate's findings of fact and conclusions of law.

{¶9} Father filed objections to the magistrate's decision and supplemented his objections after he secured a transcript of the hearing. Mother then filed a response to Father's objections. Upon review of their respective filings, the hearing transcript, and the record, the trial court overruled Father's objections.

{¶10} Father now appeals from the trial court's judgment and raises four assignments of error for this Court's review.

II.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO ORDER "SHARED PARENTING", INCLUDING THE FAILURE TO ADOPT THE APPELLANT'S PROPOSED SHARED PARENTING PLAN FILED.

{¶11} In his first assignment of error, Father argues that the magistrate and the trial court erred by not adopting his proposed shared parenting plan and granting the parties equal parenting time. This Court rejects his arguments.

{¶12} This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. "A trial court possesses broad discretion with respect to its determination of the allocation of parental rights and responsibilities, and its decision will not be overturned absent an abuse of discretion." *Kokoski v. Kokoski*, 9th Dist. Lorain No. 12CA010202, 2013-Ohio-3567, ¶ 26. An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶13} "If only one parent requests shared parenting and files a proposed plan, the court may approve the plan if it is in the best interest of the children." *Stahl v. Stahl*, 9th Dist. Summit No. 27876, 2017-Ohio-4170, ¶ 5, citing R.C. 3109.04(D)(1)(a)(iii). "In determining the best interest of the children * * *, a court must consider the factors listed in R.C. 3109.04(F)(1)." *In re A.A.*, 9th Dist. Wayne No. 18AP0035, 2019-Ohio-902, ¶ 15. Those factors include (1) the wishes

of the parents for the care of the children; (2) the wishes and the concerns of the children as expressed to the court; (3) the children's interaction and interrelationship with the parents and any others who might significantly affect their best interest; (4) the children's adjustment to their home, school, and community; (5) the mental and physical health of all involved; (6) the parent more likely to honor visitation and companionship; (7) whether a parent has failed to make child support payments; (8) whether a parent has a criminal conviction; (9) whether either parent has continuously and willfully denied the other parenting time in accordance with a court order; and (10) whether either parent has or plans to establish a residence outside the state. R.C. 3109.04(F)(1)(a)-(j). A request for shared parenting also triggers additional best-interest factors that a court must consider under R.C. 3109.04(F)(2) and 3119.23. *Kirchhofer v. Kirchhofer*, 9th Dist. Wayne No. 09CA0061, 2010-Ohio-3797, ¶ 27. Those factors include the ability of each parent to cooperate and make joint decisions, the ability of each parent to encourage a positive relationship between the child and the other parent, any history of abuse by either parent, the geographic proximity of the parents to each other, and the recommendations of the guardian ad litem. R.C. 3109.04(F)(2)(a)-(e). "'While helpful to a reviewing court, there is no requirement that a trial court expressly and separately address each best-interest factor.'" *Donley v. Donley*, 9th Dist. Lorain No. 09CA009702, 2010-Ohio-3544, ¶ 12, quoting *Wise v. Wise*, 2d Dist. Montgomery No. 23424, 2010-Ohio-1116, ¶ 5.

{¶14} Father was the only parent who presented the trial court with a proposed shared parenting plan. His plan proposed that both parties would be named primary residential parent and legal custodian and enjoy equal parenting time. That time would be split according to a week-on, week-off arrangement with Mother having both children during the first week and Father having both children during the second week. The plan further provided that the parties would

split holidays and days of special meaning according to the court's local rules and the children would attend school in the district where Father resided.

{¶15} Upon review of Father's proposed shared parenting plan and the best-interest factors outlined above, the magistrate determined that shared parenting would not be in the best interests of the children. Though the children had a strong relationship with both parents and both parents were likely to honor parenting time, the magistrate noted that the children were well-adjusted to their current environment and community. She found that the physical distance between the parties would make equal parenting time difficult to achieve and would result in significant travel and changes for the children of tender years. Further, the magistrate found, the parties had experienced communication issues in the past, and their communication issues, the physical distance between them, and several other factors had caused the guardian ad litem to make a recommendation against shared parenting. Based on the report and recommendation of the guardian ad litem and the evidence presented at the hearing, the magistrate rejected Father's proposed plan and request for shared parenting.

{¶16} The trial court entered judgment on the magistrate's decision shortly after its issuance. The court determined that the parties had been married for just over four years, that their eldest child had not yet turned four years old, and that their youngest child was almost one and a half years old. The court noted that the parties were living apart when each of the children were born, so Mother had acted as their primary care giver since birth. At the time of hearing, Mother lived in a house directly next door to her mother and attended college full-time at the University of Akron. The college was located approximately 25 minutes from Mother's home, and she would bring the children with her on school days to take advantage of its onsite daycare. The court noted that the children had been enrolled in that daycare for more than a year.

{¶17} By the time of the hearing, Father had left Wisconsin and moved to Ohio. The trial court found that he lived about one hour and thirteen minutes away from Mother and about one hour away from his job in Pennsylvania. If he cared for the children during the week, the court noted, he also would have to enroll them in daycare. The daycare facility that Father had selected was located about twenty minutes from his residence and about one hour away from his place of employment. Accordingly, if the parties shared custody, the children would have to be enrolled in two separate daycares. They also would be a significant distance away from both parents whenever they stayed at the daycare Father had selected.

{¶18} The trial court noted that the guardian ad litem had not recommended shared parenting. The guardian ad litem found the physical distance between the parties troubling, as it would necessitate the use of separate daycare facilities and make it impracticable for the children to attend one school once they became old enough. The guardian ad litem noted that the parties had communication issues and that Father had demonstrated manipulating and controlling behavior in his message exchanges with Mother. Due to their communication issues, the need for stability and consistency in the children's lives, and the practical difficulties presented by the physical distance between the parties, the guardian ad litem advised against an order for shared parenting. Upon review of the hearing testimony, evidence, and recommendation of the guardian ad litem, the trial court rejected Father's proposed plan and determined that shared parenting was not in the children's best interest.

{¶19} Father filed his objections to the magistrate's decision after the court entered its judgment. He later filed a supplement to his objections, as well as a motion to modify visitation and companionship with the children. In both his supplemental objections and his motion to modify, Father advised the court that he had accepted a new job in Akron and expected to start

working there in a month's time.  According to Father, his change in employment meant that he and Mother would be "traveling in the same direction * * * and returning basically at the same time."  He argued that the magistrate erred by not ordering shared parenting because his proposed plan was reasonable, the children were strongly bonded with both parents, both parents encouraged a loving relationship between the children and their other parent, and any communication issues between the parties were bound to improve once the adversarial proceedings resolved.  Father also argued that the guardian ad litem was biased against him and the magistrate improperly considered the guardian ad litem's biased assessment.  Upon review of his objections, Mother's response, the transcript of the proceedings, and the record, the trial court overruled his objections to the magistrate's decision.

{¶20}  Father argues that the magistrate and the trial court erred by not adopting his proposed shared parenting plan and granting the parties equal parenting time.  He argues that there was unequivocal testimony supporting the conclusion that shared parenting would be in the children's best interest.  That testimony included the fact that the children were strongly bonded with both parents and their respective family members, that both parents fostered a loving relationship between the children and their other parent, that both parents were likely to honor court-appointed time, that Father regularly provided child and medical support for the benefit of the children, and that any communications issues between the parties were likely to improve once the adversarial proceedings concluded.  Even if the children had to be enrolled in two separate daycares, Father argues, that fact alone would be an insufficient reason to reject shared parenting.  Further, he notes that he has taken steps to reduce the physical distance between the parties as, after the hearing, he accepted a job in Akron.  According to Father, the trial court gave no indication that it considered the best interest factors set forth in R.C. 3109.04.  He argues that the court erred

when it overruled his objections in a single sentence and engaged in a "bare adoption" of the magistrate's decision.

{¶21} Initially, we note that Father has directly challenged the magistrate's decision in several respects. He argues that she erred by refusing to order shared parenting, by failing to properly consider and adopt his proposed shared parenting plan, and by relying upon the guardian ad litem's biased assessment. Yet, "when appealing from a trial court's order adopting a magistrate's decision, '[a]ny claim of trial court error must be based upon the actions of the trial court,' not the magistrate." (Alteration sic.) *J.P. v. T.H.*, 9th Dist. Lorain No. 14CA010715, 2016-Ohio-243, ¶ 28, quoting *Citibank (South Dakota) N.A. v. Masters*, 9th Dist. Medina No. 07CA0073-M, 2008-Ohio-1323, ¶ 9. "[T]he proper inquiry is whether the trial court abused its discretion by overruling [Father's] objections to the magistrate's decision." *Justice v. Schell*, 9th Dist. Summit No. 28430, 2018-Ohio-1177, ¶ 6. Accordingly, in reviewing his assignment of error, we limit our discussion to the errors he alleges on the part of the trial court. *See J.P.* at ¶ 28; *Justice* at ¶ 6.

{¶22} Upon review, we cannot conclude that the trial court abused its discretion when it overruled Father's objections to the magistrate's decision and rejected his request for shared parenting. *See Kokoski*, 2013-Ohio-3567, at ¶ 26. The trial court specifically noted that it had considered Father's objections, Mother's response to his objections, the transcript of the hearing before the magistrate, and the entire file. It was not required to specifically analyze and separately rule on each of Father's objections. *See Stowe v. Chuck's Automotive Repair, LLC*, 9th Dist. Summit No. 29017, 2019-Ohio-1158, ¶ 6-8. Nor was it required to "discuss every conceivable characterization of the evidence." *Id.* at ¶ 8. In initially entering judgment upon the magistrate's decision, the court addressed the applicable best interest factors. It expressly considered the wishes

of both parents, the children's relationships, the fact that Mother had acted as the primary caretaker of both children since birth, and the fact that the children were well-adjusted to their home, daycare, and community. *See* R.C. 3109.04(F)(1)(a), (c), (d). It also expressly considered how well the parties had been able to communicate, their geographic proximity, and the recommendation of the guardian ad litem. *See* R.C. 3109.04(F)(2)(a), (d), (e). The record does not support Father's assertion that the trial court failed to consider the best interest factors or engaged in a "bare adoption" of the magistrate's decision.

{¶23} While Father referenced his having accepted a new job offer in his motion to modify visitation and his supplemental objections to the magistrate's decision, he never moved the trial court to hear additional evidence in support of his objections. Civ.R. 53(D)(4)(d) allows courts "to consider 'additional evidence' in the form of facts that were not in existence when a case was heard by the magistrate." *In re P.M.H.*, 9th Dist. Wayne No. 18AP0057, 2019-Ohio-4908, ¶ 8, quoting Civ.R. 53(D)(4)(d). A party who wishes to invoke the rule must demonstrate that he could not, "with reasonable diligence, have produced that evidence for consideration by the magistrate." Civ.R. 53(D)(4)(d). If Father believed his new job offer would impact the magistrate's decision, it was incumbent upon him to develop an argument in that regard and move the trial court, pursuant to Civ.R. 53(D)(4)(d), to hear that additional evidence. The record reflects that he failed to do so. Accordingly, this Court will not consider that evidence in its review of the trial court's judgment on the magistrate's decision.

{¶24} As previously noted, trial courts enjoy broad discretion when allocating parental rights and responsibilities. *Kokoski* at ¶ 26. The record supports the conclusion that the trial court acted within its sound discretion when it overruled Father's objections to the magistrate's decision and refused to order shared parenting. Accordingly, Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY, IF REJECTING SHARED PARENTING BETWEEN THE PARTIES, FAILING TO NAME THE APPELLANT THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN AND/OR AWARDING THE APPELLANT EQUAL PARENTING TIME WITH THE MINOR CHILDREN UNDER THE CIRCUMSTANCES AND IN THE BEST INTEREST OF THE MINOR CHILDREN.

{¶25} In his second assignment of error, Father argues that the trial court erred when it failed to name him the children's residential parent and legal custodian. He also argues that the court erred when it awarded him "low-end standard visitation" instead of equal parenting time. This Court disagrees.

{¶26} Because Father's second assignment of error also challenges the trial court's adoption of the magistrate's decision with respect to the allocation of parental rights and responsibilities, this Court incorporates the standard of review set forth in his first assignment of error. *See* Discussion, *supra*. Accordingly, this Court reviews for an abuse of discretion the trial court's decision to overrule Father's objections to the magistrate's decision to designate Mother the residential parent/legal custodian and to reject Father's request for equal time. *See Tabatabai*, 2009-Ohio-3139, at ¶ 18; *Kokoski* at ¶ 26. *See also Pirkel v. Pirkel*, 9th Dist. Lorain No. 13CA010436, 2014-Ohio-4327, ¶ 9 (parenting time decisions reviewed for an abuse of discretion).

{¶27} A trial court who rejects a motion for shared parenting in a divorce proceeding may designate one parent the residential parent and legal custodian of the parties' children if that allocation of parental rights and responsibilities is in the children's best interest. R.C. 3109.04(A)(1); *Giovanini v. Bailey*, 9th Dist. Summit Nos. 28631, 28676, 2018-Ohio-369, ¶ 8. The court's best interest determination must be based on its consideration of the factors set forth

in R.C. 3109.04(F)(1). *See id.* This Court outlined those best interest factors in its discussion of Father's first assignment of error. *See* Discussion, *supra*.

**{¶28}** As to a non-residential parent, a trial court "shall make a just and reasonable order or decree permitting [that] parent * * * to have parenting time with the child[ren] at the time and under the conditions that the court directs * * *." R.C. 3109.051(A). *See also Stahl*, 2017-Ohio-4170, at ¶ 15. The court must determine parenting time based upon "the best interests of the children involved with consideration of the factors mentioned in R.C. 3109.051(D)." *Pirkel* at ¶ 9. Many of the factors listed in R.C. 3109.051(D) mirror the best interest factors contained in R.C. 3109.04(F), as well as the additional factors a court must consider when presented with a request for shared parenting. *Compare* R.C. 3109.051(D)(1)-(16) *with* R.C. 3109.04(F)(1)(a)-(j) and 3109.04(F)(2)(a)-(e). This Court has recognized that "a trial court has full discretion to limit visitation rights and to make a visitation determination, consistent with the best interests of the * * * children at issue." *Harrison v. Lewis*, 9th Dist. Summit No. 28114, 2017-Ohio-275, ¶ 43.

**{¶29}** Upon review of the record, the testimony and evidence presented at the hearing, and the recommendation of the guardian ad litem, the magistrate determined that it was in the children's best interest to name Mother the residential parent and legal custodian. The magistrate further determined that it would be in the children's best interest to award Father parenting time on alternating weekends with two midweek visits. Each midweek visit would last for three hours and take place in Wayne County (i.e., the children's county of residence). As previously noted, the magistrate acknowledged that the children had a strong relationship with both parents and that both parents were likely to honor parenting time. Even so, she stressed that the children were of tender years, that they were well-adjusted to their current environment and community, and that Mother had acted as their consistent and primary caregiver since birth. She also stressed that the

physical distance between the parties would make equal parenting time difficult to achieve and would result in significant travel and changes for the children. The magistrate noted that the foregoing concerns had caused the guardian ad litem to make a recommendation against equal parenting time, as had the fact that the parties had suffered from communication issues. On balance, the magistrate determined that it would not be in the children's best interest to name Father residential parent/legal custodian or to award him equal parenting time.

{¶30} The trial court likewise agreed that it would be in the children's best interest to name Mother the residential parent/legal custodian and to award Father parenting time on alternating weekends with two midweek visits. Much like the magistrate, the court stressed that the children were of tender years and had consistently been in Mother's care since birth. The court noted that Mother lived directly next door to her mother and maintained a consistent schedule for the children. Specifically, she would bring the children with her to college during the week where they would receive daycare while she attended classes. The court noted that the college was only located about 25 minutes from Mother's home. Meanwhile, Father lived a considerable distance from Mother, her college, and his job. The court noted that the distance between the two would create practical difficulties if equal parenting time were awarded, particularly when the children began attending school. It also would upset the stability and consistency that the children enjoyed as they would either have to adjust to a second daycare or endure a significant increase in travel time. Based on its consideration of the hearing testimony, evidence, and recommendation of the guardian ad litem, the trial court determined that it would not be in the children's best interest to name Father residential parent/legal custodian or to award him equal parenting time.

{¶31} Father argues that the magistrate and trial court erred by not naming him residential parent and legal custodian. Alternatively, he argues that they erred by not awarding him equal

parenting time. According to Father, he and Mother stand on equal footing with regard to most of the best interest factors, but he is the one more likely to facilitate court-appointed parenting time and companionship rights. He claims that the lower court over-emphasized the physical distance between the parties, as well as the importance of keeping the children in one daycare. Further, he claims that the court ignored several important factors in its adoption of the magistrate's decision. Those factors included his efforts to move closer to the children (i.e., by leaving Wisconsin and coming to Ohio) and his belief that Mother was behind the recent animosity his eldest child had displayed toward him. Regarding equal parenting time, Father asserts that the magistrate failed to consider the factors outlined in R.C. 3109.051(D). He argues that those factors, as applied herein, weigh in favor of an upward deviation from the court's standard parenting time schedule. Because both parties have a close relationship with the children and are equally capable of parenting them, Father argues, the trial court erred when it followed the magistrate's recommendation for "low-end standard visitation" instead of ordering equal parenting time.

{¶32} To the extent Father has directly challenged the magistrate's decision in any respect, those arguments are not properly before us. *See J.P.*, 2016-Ohio-243, at ¶ 28; *Justice*, 2018-Ohio-1177, at ¶ 6. The only question is "whether the trial court abused its discretion by overruling [Father's] objections to the magistrate's decision." *Justice* at ¶ 6. Upon review, Father has not shown that the trial court abused its discretion when it overruled his objections, named Mother residential parent/legal custodian, and rejected his request for equal parenting time.

{¶33} As noted, trial courts enjoy broad discretion in both the allocation of parental rights and responsibilities and visitation determinations. *See Kokoski*, 2013-Ohio-3567, at ¶ 26; *Harrison*, 2017-Ohio-275, at ¶ 43. When the trial court herein initially entered judgment upon the magistrate's decision, it expressly considered the age of the children, their relationships, the fact

that Mother had acted as their primary caretaker since birth, and the fact that the children were well-adjusted to their home, daycare, and community. *See* R.C. 3109.04(F)(1)(a), (c), (d) and R.C. 3109.051(D)(1), (4), (5). It also expressly considered how well Mother and Father had been able to communicate, their geographic proximity in relation to each other and their daily travels, and the recommendations of the guardian ad litem. *See* R.C. 3109.051(D)(2), (3), (16). Though the court did not reiterate its findings when ruling on Father's objections, it was not required to do so. Nor was it required to expressly rule upon each of Father's objections. *See Stowe*, 2019-Ohio-1158, at ¶ 6-8. The record reflects that the court considered the best interests of the children and fashioned its determinations with those interests in mind. Father has not shown that its decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke*, 2015-Ohio-2507, at ¶ 8, quoting *Tretola*, 2015-Ohio-1999, at ¶ 25. Accordingly, his second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ORDERING AN OBLIGATION OF CHILD SUPPORT AGAINST THE APPELLANT AND/OR BY FAILING TO ADDRESS A DEVIATION FROM THE OHIO CHILD SUPPORT GUIDELINES IN THE AWARD OF CHILD SUPPORT AGAINST THE APPELLANT.

{¶34} In his third assignment of error, Father argues that the trial court erred when it overruled his objection to the magistrate's decision on child support. Specifically, he argues that he was entitled to a downward deviation, as well as reimbursement for temporary support he overpaid when Mother overreported her childcare expenses. For the following reasons, this Court rejects his arguments.

{¶35} This Court reviews a trial court's action on a magistrate's decision for an abuse of discretion "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at

¶ 18. *See also Fields*, 2008-Ohio-5232, at ¶ 9. Appellate courts review a trial court's decision concerning child support matters using an abuse of discretion standard. *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 21. Thus, the trial court's decision will be upheld unless it "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke* at ¶ 8, quoting *Tretola* at ¶ 25.

{¶36} "R.C. 3119.03 establishes a rebuttable presumption that the child support obligation calculated pursuant to the basic child support schedule and applicable worksheet is the correct amount of child support due." *Seegert v. Seegert*, 9th Dist. Summit No. 28932, 2018-Ohio-5119, ¶ 16. The court may deviate "from the amount as calculated in the worksheet and schedule if [it]: (1) finds that the amount calculated is unjust or inappropriate; (2) finds that the amount calculated does not conform to the [children's] best interest[; and] (3) states findings of fact supporting the deviation from the amount calculated." *Irish v. Irish*, 9th Dist. Lorain Nos. 09CA009577, 09CA009578, 2010-Ohio-403, ¶ 12. The statutory factors that a court must consider in determining whether to grant a deviation are contained in R.C. 3119.23. *McDerment v. McDerment*, 9th Dist. Lorain No. 18CA011369, 2019-Ohio-2609, ¶ 24. The party seeking a deviation bears the burden of overcoming the rebuttable presumption established by R.C. 3119.03 and must provide the court with "'facts from which [it] can determine that the actual annual obligation is unjust or inappropriate and would not be in the children's best interest.'" *Batcher v. Pierce*, 9th Dist. Summit Nos. 27415, 27497, 2015-Ohio-2130, ¶ 19, quoting *Irish v. Irish*, 9th Dist. Lorain No. 10CA009810, 2011-Ohio-3111, ¶ 16.

{¶37} The magistrate calculated Father's child support obligation according to the basic child support schedule and worksheet. Father objected to her decision, arguing that a downward deviation was appropriate "given his costs for parenting time from Wisconsin to Ohio and a

separation for the actual daycare expenses that [Mother] paid." The trial court overruled his objection and ordered him to pay child support in the amount calculated under the schedule and worksheet. On appeal, Father maintains that a downward deviation was appropriate.

{¶38} Father's argument primarily consists of a recitation of the law that applies when a party requests a downward deviation. Though he briefly references "costs for parenting time from Wisconsin to Ohio" and daycare expenses he overpaid, *see* Discussion *infra*, he has made no attempt to explain why the lower court's child support award was not in his children's best interest. *See Irish*, 2011-Ohio-3111, at ¶ 12. Nor has he examined any of the statutory factors contained in R.C. 3119.23. *See McDerment* at ¶ 24. As noted, child support calculated pursuant to the basic schedule and worksheet is presumed to be correct. *See* R.C. 3119.03. It was Father's burden to overcome that rebuttable presumption by providing the trial court with facts and an argument establishing that his calculated obligation would be "'unjust or inappropriate and would not be in the children's best interest.'" *Batcher*, 2015-Ohio-2130, at ¶ 19, quoting *Irish*, 2011-Ohio-3111, at ¶ 16. The record reflects that Father failed to satisfy his burden. Accordingly, this Court cannot conclude that the trial court abused its discretion when it overruled his objection to the magistrate's decision on the issue of a downward deviation.

{¶39} Father also argues that the lower court erred by failing to address the return of overpayments he made as a result of Mother overreporting her childcare expenses. When moving for temporary child support, Mother reported that her childcare expenses were $14,400 per year. The magistrate relied on that figure in computing Father's child support obligation and determined that he should pay $2,541.33 per month in temporary support. The trial court entered judgment on the temporary orders on November 27, 2018.

{¶40} At the divorce hearing before the magistrate, Mother acknowledged that her actual out-of-pocket expenses for childcare were not $14,400 per year. Because her college paid for more than half of her childcare expenses, she was only responsible for about $112 per week. Mother explained, however, that she did not begin receiving that assistance from her college until the start of 2019. She testified that she accurately reported her childcare expenses at the time she moved for temporary child support.

{¶41} According to Father, the magistrate's decision failed to address the return of his child support overpayments, which amounted to $569.18 per month. He argues that the trial court erred when it overruled his objection to the magistrate's failure to address his overpayment. The record reflects, however, that the trial court only ordered Father to pay $1,972.15 per month in child support and ordered that amount "be retroactive to January 23, 2019, the date of [Father's] motion to review temporary orders and support." Because the court ordered that the amount be applied retroactively, its order entitled Father to a credit of $569.18 per month (i.e., $2,541.33 minus $1,972.15) beginning on January 23, 2019. Father has not addressed the retroactivity portion of the trial court's order, so he has not set forth any argument as to why it did not sufficiently address the issue of his overpayment. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Because he has not shown that the trial court erred when it overruled his objection concerning overpayment, we reject that portion of his argument. Father's third assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 4

> THE TRIAL COURT AND THE MAGISTRATE ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO REMOVE THE GUARDIAN AD LITEM UPON MOTION OF THE APPELLANT AND IN FAILING TO REJECT THE GAL'S REPORT AND RECOMMENDATIONS GIVEN HER APPARENT

BIAS AGAINST AND CONFLICT OF INTEREST TO THE DETRIMENT OF THE APPELLANT.

{¶42} In his fourth assignment of error, Father argues that the magistrate and the trial court erred when they failed to remove the guardian ad litem and reject her report and recommendation. Specifically, he argues that the guardian ad litem demonstrated bias against him and prejudiced his position in the proceedings. For the following reasons, this Court rejects his argument.

{¶43} This Court reviews a trial court's action on a magistrate's decision for an abuse of discretion "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 18. *See also Fields*, 2008-Ohio-5232, at ¶ 9. A court's denial of a request to remove a guardian ad litem is a decision that will be upheld absent an abuse of discretion. *I.C.-R. v. N.R.*, 9th Dist. Summit No. 27671, 2016-Ohio-1329, ¶ 60. Consequently, the court's decision will be upheld unless it "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke*, 2015-Ohio-2507, at ¶ 8, quoting *Tretola*, 2015-Ohio-1999, at ¶ 25.

{¶44} "A guardian ad litem who is appointed in a domestic relations case must discharge her duties with 'independence, objectivity, and fairness' and without conflicts of interest." *King v. King*, 9th Dist. Medina No. 12CA0060-M, 2013-Ohio-3070, ¶ 5, quoting Former Sup.R. 48(D). "Guardians ad litem are subject to removal for failure to perform their duties in this manner." *King* at ¶ 5. Yet, a trial court's refusal to remove a guardian ad litem will result in reversible error only if an appellant establishes resulting prejudice. *See I.C.-R.* at ¶ 62; *In re K.G.*, 9th Dist. Wayne No. 10CA0016, 2010-Ohio-4399, ¶ 20. A guardian ad litem's recommendation is but one factor that a court must consider in a best interest determination, and it is not bound by that recommendation. *Rice v. Sobel*, 9th Dist. Summit No. 27458, 2015-Ohio-2251, ¶ 35.

{¶45} Mother and Father both testified at the divorce hearing before the magistrate. During Father's direct examination, he testified that he received disability income from the federal government because he was a 100% disabled veteran. As he continued to testify, the guardian ad litem tapped Mother's counsel from behind and passed him a note. Father's counsel observed their exchange and objected to the guardian ad litem's behavior. In response, the guardian ad litem explained that she had passed Mother's counsel a note because she had a question for Father. She indicated that it was not important to her who asked the question so long as Father answered it. Mother's counsel then read the two-part question, which asked why Father was 100% disabled and what his disabling condition was. In response, Father moved to strike the guardian ad litem, arguing that her behavior evidenced a bias in favor of Mother. Though the magistrate made note of the exchange that had occurred, she refused to remove the guardian ad litem.

{¶46} Subsequently, Father called the guardian ad litem to testify and asked her about passing notes to Mother's counsel. The guardian ad litem testified that she had only passed one note. She explained that she did so because she was not an attorney and could not question Father herself. As to her question, the guardian ad litem stated that she did not recall either party ever mentioning a disability when she interviewed them, so she wanted information about the nature of Father's disability. She testified that she passed her question to Mother's counsel because Father's counsel was in the middle of his examination, she did not want to disturb him, and he had already moved on to another topic.

{¶47} In his objections to the magistrate's decision, Father argued that the magistrate erred by not removing the guardian ad litem and rejecting her report/recommendation on the basis that she was biased against him. He argued that, during the proceedings, the guardian ad litem "would tap the back of [Mother's counsel] and then exchange notes and comments without [his

counsel's] ability to hear, dispute or otherwise engage." According to Father, the guardian ad litem's actions evidenced a conflict of interest and placed him at a clear disadvantage, given that she was helping Mother cross-examine him. He also argued that the guardian ad litem demonstrated bias when she made certain statements to Mother. Specifically, he claimed that Mother once told him via Our Family Wizard that the guardian ad litem had said she (Mother) would keep the children, regardless of his efforts. Father argued that the guardian ad litem "could not point to anything negative about [him] as a person or as a father," but nonetheless felt that he was overbearing and manipulative. He argued that the magistrate erred by refusing to remove the guardian ad litem and by relying on her biased assessment. Upon review of his objection, Mother's response, the transcript of the hearing, and the record, the trial court overruled Father's objection to the magistrate's decision.

{¶48} Father's argument on appeal mirrors the argument he set forth in his objections to the magistrate's decision. He argues that the guardian ad litem evidenced clear bias against him when she "exchange[d] notes and comments" with Mother's counsel and told Mother (via Our Family Wizard) that she would receive full custody. He also argues that the guardian ad litem was biased against him because she cast him as overbearing and manipulative in the absence of evidence to support that assessment. Because her report/recommendation ought to have been set aside and she ought to have been removed due to her evident bias against him, Father argues, the trial court erred when it overruled his objection to the magistrate's decision.

{¶49} Upon review, this Court cannot conclude that the trial court abused its discretion when it overruled Father's objection to the magistrate's decision. *See Kokoski*, 2013-Ohio-3567, at ¶ 26. First, the record does not support Father's claim that the guardian ad litem was "exchang[ing] notes and comments" with Mother's counsel during the proceedings. Father's

description suggests a pattern of behavior on the part of the guardian ad litem, but the record reflects that she passed one note to Mother's counsel. That note contained a question, not commentary, and Father had the opportunity to hear the question and examine the guardian ad litem about her actions. Thus, Father has not shown that the guardian ad litem was coaching Mother's counsel or that he was deprived of the opportunity to question her motives.

{¶50} Second, even assuming the guardian ad litem's actions were inappropriate, Father has not demonstrated resulting prejudice. *See I.C.-R.*, 2016-Ohio-1329, at ¶ 62; *In re K.G.*, 2010-Ohio-4399, at ¶ 20. The guardian ad litem had a number of positive things to say about Father. She specifically testified that she was impressed by the steps he had taken to be with the children, that he had established an appropriate home for them, and that she did not have reservations about his interaction with them. Her hesitation to recommend shared parenting or equal parenting time stemmed primarily from the geographical distance between the parties and the message exchanges she had seen on Our Family Wizard. The lower court had the ability to consider those items itself. Further, it was "not bound by the recommendation of the guardian ad litem," *In re J.P.-M.*, 9th Dist. Summit Nos. 23694, 23714, 2007-Ohio-5412, ¶ 63, as her recommendation was only one factor in its best interest determination, *see Rice*, 2015-Ohio-2251, at ¶ 35. The trial court indicated that it reached its decision based upon careful consideration of the testimony, the evidence, and the children's best interest. Because Father has not demonstrated that he sustained prejudice as a result of any alleged bias on the part of the guardian ad litem, this Court rejects his argument that the trial court erred by overruling his objection to the magistrate's decision. *See In re J.P.-M.* at ¶ 63. *See also Roberts v. McGrady*, 9th Dist. Summit No. 16986, 1995 WL 283777, *4 (May 10, 1995) (alleged unfair bias on the part of the guardian ad litem deemed harmless error). Father's fourth assignment of error is overruled.

III.

**{¶51}** Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

R. RUSSELL KUBYN, Attorney at Law, for Appellant.

DAVID L. MCARTOR, Attorney at Law, for Appellee.